```
            UNITED STATES DISTRICT COURT
            CENTRAL DISTRICT OF CALIFORNIA
            EASTERN DIVISION - RIVERSIDE
```

U.S. EQUAL EMPLOYMENT      ) CASE NO:  5:19-CV-00941-CBM-SHK
OPPORTUNITY COMMISSION,    )
                           )              CIVIL
            Plaintiff,     )
                           )       Riverside, California
     vs.                   )
                           )     Tuesday, October 13, 2020
CARDINAL HEALTH 200, LLC,  )
ET AL,                     )
                           )
            Defendants.    )
_____)


      TELEPHONIC PROCEEDING RE: INFORMAL DISCOVERY DISPUTE

      BEFORE THE HONORABLE SHASHI H. KEWALRAMANI,
            UNITED STATES MAGISTRATE JUDGE



Appearances:                See Next Page


Court Reporter:             Recorded; Microsoft Teams

Deputy Clerk:               D. Castellanos

Transcribed By:             Exceptional Reporting Services, Inc.
                            P.O. Box 8365
                            Corpus Christi, TX 78468
                            361 949-2988







Proceedings recorded by electronic sound recording; transcript
produced by transcription service.

**<u>APPEARANCES</u>:**


For Plaintiff:             ANDREA E. RINGER, ESQ.
                                       NAKKISA AKHAVEN, ESQ.
                                       NATALIE A. NARDECCHIA, ESQ.
                                       U.S. EEOC
                                       255 East Temple Street
                                       4th Floor
                                       Los Angeles, CA 90012

For Defendants:           JAMIE M. GOETZ-ANDERSON, ESQ.
                                         DAVID K. MONTGOMERY, ESQ.
                                       Jackson Lewis, LLP
                                     PNC Center
                                     201 East 5th Street
                                     26th Floor
                                     Cincinnati, OH 45202

                                   KEVIN KANOONI, ESQ.
                                   Kenneth Roberts, APLC
                                   6355 Topanga Canyon Blvd.
                                   Suite 403
                                   Woodland Hills, CA 91367

| | |
|---|---|
| 1 | **Riverside, California; Tuesday, October 13, 2020** |
| 2 | **(Telephonic Appearances)** |
| 3 | **THE CLERK:**  Okay.  This case is now being recorded. |
| 4 | Calling Case Number 5:19-cv-941, *U.S. Equal Employment* |
| 5 | *Opportunity Commission versus Cardinal Health 200, et al.* |
| 6 | Counsel, please state your appearances beginning with |
| 7 | the plaintiffs, please. |
| 8 | **MS. RINGER:**  Andrea Ringer on behalf of the U.S. |
| 9 | Equal Employment Opportunity Commission, and with me we also |
| 10 | have Nakkisa Akhaven and Natalie Nardecchia from the EEOC, as |
| 11 | well. |
| 12 | **MS. GOETZ-ANDERSON:**  This is Jamie Goetz-Anderson on |
| 13 | behalf of Defendant, Cardinal Health 200, LLC.  With me in the |
| 14 | room I also have David Montgomery, also on behalf of Cardinal |
| 15 | Health. |
| 16 | **MR. KANOONI:**  Good morning.  This is Kevin Kanooni |
| 17 | appearing on behalf of Defendant Howroyd-Wright Employment |
| 18 | Agency, Inc. |
| 19 | **THE COURT:**  Very good.  Thank you. |
| 20 | So, who's going to be taking the lead for plaintiffs? |
| 21 | **MS. RINGER:**  I will be.  Andrea Ringer. |
| 22 | **THE COURT:**  Very good.  Is it okay if I call you |
| 23 | Ms. Ringer? |
| 24 | **MS. RINGER:**  Sure. |
| 25 | **THE COURT:**  Thank you. |

1              And who's going to be taking the lead for Cardinal

2    Health?

3              **MS. GOETZ-ANDERSON:**  This is Jamie Goetz-Anderson.  I

4    will be.

5              **THE COURT:**  Very good.  Is it okay if I call you

6    Ms. Goetz-Anderson?

7              **MS. GOETZ-ANDERSON:**  Yes.  Thank you.

8              **THE COURT:**  Thank you.

9              And Howroyd-Wright; I'm sorry.  I didn't get the name

10   of the person for the third party.

11             **MR. KANOONI:**  Oh.  This is Kevin Kanooni, your Honor,

12   and I'm here just monitoring.

13             **THE COURT:**  Okay.  Very good.

14             All right.  This is a public hearing, so -- well, let

15   me first ask.  Ms. Ringer, do you have any objection to

16   Mr. Kanooni observing?

17             **MS. RINGER:**  No objections.

18             **THE COURT:**  Okay.  Any objection from Ms. Goetz-

19   Anderson?

20             **MS. GOETZ-ANDERSON:**  No objection.

21             **THE COURT:**  Very good.  Okay.

22             So, let's go through the original.  I saw the

23   additional two topics.  We'll take those at the end, but I

24   wanted to go through the first what looks like 12 categories of

25   materials that seems to be outstanding.  I also looked at the

5

1   order issued by Judge Marshall.  I see that fact discovery has

2   been extended out to December 29th, 2020, and that Judge

3   Marshall's standing order requires all discovery motions to be

4   heard by that day.

5          Let me first ask a question, and we can double back

6   to it and the parties can think about this.  I found, at least

7   in my experience, that if the parties can agree to a

8   substantial complete-by date or substantial compliance-by date

9   on the documents, that any motions don't get rushed until --

10  they can be made before the deadline.  I'll ask the folks if

11  the parties have talked about that or have considered that as

12  we get to the end of the hearing today.

13         So, let me turn first to the number one, which is the

14  letter of determination that -- in June 2018.  And what this

15  seems to indicate, at least from the EEOC standpoint, is that

16  the relevant time scope is from April 2016, which was, I

17  presume, in the letter of determination of when the

18  investigation relates to, or the case relates to, to the

19  present, whereas Cardinal has taken the position that discovery

20  is only relevant between April 2016 and June 2018 when the

21  letter of determination was sent.

22         So, let me first turn over to Ms. Ringer in that

23  regard.

24         **MS. RINGER:**  Thank you, your Honor.  So, you're

25  correct that it's our position that the relevant timeframe is

6

1    April 2016 to the present, and April 2016 is 300 days before

2    the first charge of discrimination was filed.  So, the EEOC, as

3    I'm sure you know, is a federal agency that enforces Title VII.

4    We're not subject to Rule 23, and we have a duty to seek relief

5    on behalf of all aggrieved individuals in this case.

6            So, the underlying administrative investigation began

7    after two charges of discrimination were filed in 2017.  The

8    letter of determination was issued in June 2018.  Since then,

9    we have filed our lawsuit, and we have identified class members

10   that were subjected to the same harm as our original charging

11   parties.

12           So, this is a case, it's a hostile work environment

13   based on race.  Hostile work environment is viewed as a single

14   act that must be viewed in the totality of the circumstances.

15   The Ninth Circuit standard is clear that we can seek relief for

16   claimants from 300 days prior to the charge of discrimination

17   filed through to the present, as long as the claims are like

18   and related to the original charges.  And, so, here we're

19   simply -- we're seeking relief for claimants to the present on

20   the basis of them experiencing similar harassment to our

21   charging parties.  We also need evidence through to the present

22   to assess the injunctive relief that's appropriate, and as well

23   as, importantly, to look at how Cardinal Health has taken

24   steps, to the extent it has taken steps, to prevent and correct

25   this hostile work environment towards Black workers.  We also

1    believe it's -- you know, it's important for punitive damages.

2    We're seeking punitive damages here.

3              So, we take the position that, you know, Cardinal

4    Health has been on notice, that there were class allegations

5    here, and that we conciliated on behalf of a class of Black

6    workers in 2018, and so, therefore, we should be able to obtain

7    evidence from after June 2018 so we can, you know, evaluate the

8    hostile work environment from the totality of the circumstances

9    and determine whether or not this hostile work environment is

10   continuing through to the present.  The Ninth Circuit held in

11   *EEOC versus Global Horizons* in 2019 that it is a reversible

12   error to fail -- for the Court to not consider all the evidence

13   in its totality.  So, we believe here this is a -- this is a

14   very -- this is the most important issue to the EEOC.  It's

15   really important that we vindicate the public interest here,

16   and this is something that is very important to our case and to

17   the agency as a whole.

18             **THE COURT:**  All right.  Thank you.

19             Ms. Goetz-Anderson?

20             **MS. GOETZ-ANDERSON:**  Thank you, your Honor.  I think

21   we would agree with Ms. Ringer on one point, that this is a

22   very significant issue.  It essentially looms over all the --

23   all the discovery requests and the discovery in the case.  For

24   that reason, I'm happy to give you a summary of our position

25   today, but we would request the opportunity to brief the issue

1    before a decision is made with respect to this temporal scope

2    argument.

3            **THE COURT:**  Okay.  Go ahead.

4            **MS. GOETZ-ANDERSON:**  With that said, so, we believe

5    our position is supported by a recent Supreme Court case that

6    came after the Ninth Circuit case on which the EEOC relies.

7    The Title VII requires that the EEOC, before bringing suit, to

8    satisfy certain obligations, including investigation,

9    reasonable cause determination, and conciliation.  It's our

10   position in this case that the EEOC did not and could not have

11   satisfied those obligations with respect to any alleged

12   incidents of harassment or, you know, individuals who were not

13   employed or not working there until after June of 2018 when it,

14   you know, issued its letter of determination and effectively

15   ended its investigation.

16           The Supreme Court case that I was referring to is

17   *CRST -- EEOC versus CRST Van Expedited*, which was issued in

18   late 2016.  In that case, the district -- the E -- (indisc.;

19   audio glitch) was a similar harassment type claim.  The EEOC

20   brought a lawsuit against the company and sought relief on

21   behalf of a number of allegedly agreed individuals of women.

22   The district court in that case barred the EEOC from seeking

23   relief on behalf of 67 women, who it held that the EEOC did not

24   properly investigate and conciliate their claims before filing

25   suit.  The case went up and down on appeal several times with

1   regard to the issue of whether CRST was able to recover

2   attorneys' fees from the EEOC.  In particular, the last time it

3   went up to the Court of Appeals, the Court of Appeals issued a

4   ruling that because these 67 claims were dismissed on the basis

5   that the EEOC did not satisfy its investigation and

6   conciliation requirements, that that was not a determination on

7   the merits and, therefore, that the employer was not considered

8   a prevailing party for purposes of attorneys' fees.

9           The Supreme Court held that -- when it went up to the

10  Supreme Court, the Supreme Court held that the -- an employer

11  does not need to succeed on the merits in order to be

12  considered a prevailing party for purposes of attorneys' fees.

13  In doing so, the Supreme Court did not disturb the lower

14  court's holding that the EEOC was barred from seeking relief on

15  behalf of these 67 individuals.  So, we believe that supports

16  our position that the EEOC is not able to seek relief on behalf

17  of people for whom the alleged harassment or discrimination

18  occurred after it issued its letter of determination.

19          There's been at least one district court case in the

20  Ninth Circuit.  It is a Eastern District of California case

21  later that year that suggests that the -- this *Arizona versus*

22  *GEO Group* case, Ninth Circuit case, was no longer the law on

23  this point after the *CRST* case.

24          **THE COURT:**  Okay.  And what about, Ms. Goetz-

25  Anderson, the 2019 Ninth Circuit case that Ms. Ringer

1    referenced?

2            **MS. GOETZ-ANDERSON:**  You know, I'm not familiar with

3    that case off hand, but I don't believe that that addressed the

4    specific issue that we're talking about with regard to whether

5    discovery is permissible post letter of determination.

6            **THE COURT:**  All right.  So, have the parties set

7    forth their legal positions, including this Ninth Circuit case,

8    the most recent one from 2019, in correspondence to one another

9    and sort of kind of dug into it on the legal side before --

10    before now?  Ms. Ringer?

11            **MS. RINGER:**  Your Honor, may I respond to Ms. Goetz-

12    Anderson's position?

13            **THE COURT:**  Well --

14            **MS. RINGER:**  And before I -- before I do so, we have

15    met and conferred multiple times by letter and phone the last

16    several months.

17            **THE COURT:**  And that include -- that relates to the

18    2019 Ninth Circuit case being cited by the EEOC?

19            **MS. RINGER:**  I believe we have cited that in our

20    correspondence, but we have discussed more so the Ninth Circuit

21    standard for when the EEOC can seek relief to the present, and

22    that case is *Arizona versus Geo Group*.  It's a Ninth Circuit

23    case from 2016.  So, we have discussed that case at length.

24            **THE COURT:**  I'm not talking the 2016; the 2019 case.

25            **MS. RINGER:**  The 2019 case, the *EEOC versus Global*

11

1    *Horizons* case, I don't believe we have discussed it at length.

2    Case is more specific to viewing harassment -- one act, viewing

3    it from the totality of the circumstances, where we've

4    primarily gone back and forth specifically about the standard

5    or seeking relief.

6             **THE COURT:**  Well, why don't I do this.  It sounds

7    like this is going to involve some legal analysis on my part,

8    so I really can't take a look and make that decision today on

9    that.  So, Cardinal is the party opposing the disclosure of

10   information post 2018, or June 2018.  Therefore, they would

11   have the burden.

12            Ms. Goetz-Anderson, about how many pages do you think

13   you would need to brief this issue?

14            **MS. GOETZ-ANDERSON:**  We could make ours fairly brief;

15   it would be not more than five.

16            **THE COURT:**  Okay.  Why don't I do this?  Let's give

17   you -- let's give -- Cardinal will have 10 pages in accordance

18   with the Central District rules, 14-point, double spaced,

19   etcetera.  You'll find the briefing requirements under our

20   local rules.  Once that is filed, if the EEOC has -- is a week

21   going to be enough time to respond, Ms. Ringer?

22            **MS. RINGER:**  That's plenty of time, your Honor.

23            **THE COURT:**  Very good.  So, what we'll do, then, is,

24   once -- once defendant files their motion in this regard -- I

25   guess it's -- it is a motion in opposition based upon just the

12

1   temporal aspect.  They could file it; EEOC will have one week,

2   again, 10 pages, to respond; and then Cardinal will have five

3   pages for a reply to be filed a week thereafter.

4           Would the parties prefer that I set a deadline by

5   which the paper has to be filed?  Ms. Goetz-Anderson?

6           **MS. GOETZ-ANDERSON:**  That's fine with us, your Honor.

7           **THE COURT:**  Okay.  When do you think you could file

8   it by?

9           **MS. GOETZ-ANDERSON:**  Can we have a week?

10          **THE COURT:**  Sure.  So, October 20th is when -- by

11  when Cardinal will file their paper in this regard.  EEOC will

12  respond by October 27th, and a reply will be due on, looks

13  like, November 3rd.  If you can give me a second.  Yes.

14  November 3rd will be when -- ah.  I don't want -- I don't want

15  to do it on election day.  Let's do it -- hold on.  Give me a

16  second, please.

17          **(Pause)**

18          **THE COURT:**  How about -- do you think EEOC could file

19  its reply by November 2nd, Ms. Ringer?

20          **MS. RINGER:**  I -- Your Honor, I thought you said our

21  response --

22          **THE COURT:**  I'm sorry.

23          **MS. RINGER:**  -- would be due October 27th.

24          **THE COURT:**  I will require that Cardinal -- Cardinal

25  file their reply by November 2nd.

1          **MS. GOETZ-ANDERSON:**  Sure, your Honor.

2          **THE COURT:**  Okay.  So, what will be the briefing

3    schedule on the issue related to the temporal aspect of the

4    allowable discovery.  So, again, I'll repeat it.  Cardinal will

5    file its opening brief October 20th.  Opposition will be due

6    October 27th by the EEOC.  Any reply will be due by November

7    2nd.  And that's, again, going to be 10 pages, 10 pages, five

8    pages.  All right?

9          **MS. RINGER:**  Thank you.

10          **MS. GOETZ-ANDERSON:**  Thank you, your Honor.

11          **THE COURT:**  So, we'll deal with that issue.  Okay.

12          Turning, then, next to the first set of RFPs that

13    were sent out, can you clarify this for me, Ms. Ringer?  I

14    understand that this is -- well, I have an understanding, but I

15    want to make sure I understand what you folks are getting at.

16    So, go ahead.

17          **MS. RINGER:**  So, the second issue is, is that

18    Cardinal Health's responses to our requests for production

19    primarily do not comply with Rule 34 in that they don't specify

20    whether or not responsive documents are being withheld and on

21    the basis of their objections.  Their objections are also not

22    stated with specificity.  And there to date has not been a

23    privilege log produced.

24          Since their responses were served in June, the

25    parties have met and conferred many times, and Cardinal Health

14

1    agreed to amend its responses so that they would comply with

2    the federal rules.  We still have not received an amended

3    response.  And it's come to our attention over time, and

4    specifically in the last month, that there are documents that

5    have been withheld, and, you know, we're really concerned about

6    the incompleteness of the production to date, and, at minimum,

7    we would like an amended response that's compliant with the

8    rules and a production deadline as well.  There's -- the

9    production was not complete by the date that they served their

10   responses, and there was no final date identified in their

11   responses, as required by Rule 34.

12            **THE COURT:**  Ms. Goetz-Anderson?

13            **MS. GOETZ-ANDERSON:**  Your Honor, just to clarify one

14   thing, we have produced a privilege log and have updated, I

15   think -- updated it at least once.  I think it was most

16   recently produced on September 28.

17            With respect to the RFPs, we did agree to amend our

18   responses to state whether or not any documents are being

19   (indisc.) on the basis of our objection.  So, we can definitely

20   do that.

21            This -- the narrative that Ms. Ringer sent the Court

22   here also addressed interrogatories, which we don't understand

23   this request that -- you know, we don't think Rule 33 includes

24   any requirement that a responding party identify what

25   information is being withheld.

1          **THE COURT:** All right.  So, when do you -- when does

2    Cardinal think it can provide its amended responses to the

3    RFPs, at least, then?

4          **MS. GOETZ-ANDERSON:** Could we do 14 days?

5          **THE COURT:** No.  It's too long.

6          **MS. GOETZ-ANDERSON:** Okay.  How about seven days?

7          **THE COURT:** That's -- is that agreeable, Ms. Ringer?

8          **MS. RINGER:** Seven days is agreeable.

9          **THE COURT:** Very good.  All right.  So, an amended

10   response to the outstanding RFPs will be provided by October

11   20th.

12          With respect to the interrogatories, Ms. Ringer, do

13   you want to respond to what Ms. Goetz-Anderson said?

14          **MS. RINGER:** I think I -- the issue with

15   interrogatories was just a little bit different.  It was that

16   the objections were not stated with specificity, and it wasn't

17   clear.  Their responses themselves were not complete.  We would

18   like their responses amended, but I think that, specifically,

19   we're more concerned with the two interrogatories we identified

20   in -- I think it's 11 and 12.

21          **THE COURT:** Okay.  Well, we'll get to that.

22          So, with respect to the other interrogatories, this

23   is a issue just generally I see in discovery quite a bit, which

24   is, "They haven't given us everything, and they haven't

25   responded completely."  And at the end of the day, I can only

16

1    say, "Follow the rules."  Right?  The mechanisms we have in

2    place requires the good faith participation by counsel, as

3    officers of the Court, to comply with the rules in a meaningful

4    way, and if they have a legal basis to object to it, to state

5    that, and then we can deal with it.

6           So, just generally, I appreciate everybody's -- all

7    parties; I have had it both from plaintiffs and defendants --

8    oftentimes frustration with, there's something more; we just --

9    and there's only so much I can do other than say, "Turn over

10   what's responsive and what's supposed to be turned over."  You

11   know, and then the ramifications would -- you know, the other

12   thing is, if it gets to the point where there are other

13   documents that can be shown that were not produced but should

14   have been produced, then we can require certifications from

15   counsel.  All right?  Just looking down the road, that's a

16   potential avenue if there is continued disbelief amongst the

17   parties as to the completeness of the production.  Okay?

18          So, we'll get the -- and the flip of it is, on

19   interrogatories, especially, you know, if there is an

20   incomplete response, then, as you know, Ms. Ringer, then the

21   avenue may be exclusion or other steps that can be taken at the

22   proof stage to prohibit the disclosure of information that

23   should have been provided previously.

24          All right.  So, the updated or amended RFP responses

25   will be due by October 20th.  If there is a substantive issue

17

1    with respect to the interrogatories, you can always bring that

2    back and we could take a look at that, but that's -- this

3    doesn't sound like a substantive issue, particularly, other

4    than 11 and 12, which we'll get to down -- later, so I think

5    that resolves that.

6              Is there any issue, then, remaining in that regard?

7    Ms. Ringer?

8              **MS. RINGER:**  The -- you know, the one issue that I --

9    I apologize -- I just noticed very recently was that the

10   interrogatories don't include a verification, so we would like

11   Cardinal Health to provide a verification --

12             **THE COURT:**  Right.

13             **MS. RINGER:**  -- to (indisc.).

14             **THE COURT:**  So, that will have to be provided by

15   October 20th, as well.

16             **MS. GOETZ-ANDERSON:**  Sure.

17             **THE COURT:**  Okay.  With respect to, then, the

18   privilege log, I have read the information provided by the

19   parties and the recent representation by defendant's counsel,

20   Ms. Goetz-Anderson, that they have provided -- defendants have

21   provided an updated privilege log.  Is that correct, Ms. Goetz-

22   Anderson?

23             **MS. GOETZ-ANDERSON:**  Yeah.  It was most recently

24   produced on September 28th, and we'll continue to update the

25   privilege log to the extent that additional, you know,

18

1    privileged documents, we become aware of them, and, you know,

2    withhold them.

3              THE COURT:  Okay.  It looks to me that the RFPs were

4    propounded on May 4th.

5              Is that about right, Ms. Ringer, or were they

6    propounded previously but extension was provided?

7              MS. RINGER:  They were propounded in December, 2019.

8              THE COURT:  Okay.  And I believe, then, there is some

9    negotiation occurring between the parties, and so there was

10   some agreements to hold off on full-blown discovery to see if

11   there was the opportunity to resolve the matter.

12             Is that -- is my understanding correct, Ms. Ringer?

13             MS. RINGER:  Yes.  You're correct.  I think, you

14   know, each extension was, more or less, either to -- (indisc.;

15   audio glitch) Cardinal Health more time to respond to the

16   discovery or to allow the parties some space to see if we could

17   settle the matter, and we did have a partial day mediation in

18   March (indisc.).

19             THE COURT:  Okay.  Let me -- Ms. Goetz-Anderson, were

20   the documents that were at least prior -- that were -- that

21   defendants had between April and June -- April 2016 and June

22   2018, were those all produced by June 5th, 2020?

23             MS. GOETZ-ANDERSON:  Were the documents -- I'm sorry,

24   your Honor.  I'm not sure I understand your question.

25             THE COURT:  Sure.  So, based -- I appreciate that

19

1    there's the issue regarding post June 2018 production and

2    whether those should be provided.

3              **MS. GOETZ-ANDERSON:**  Uh-huh.

4              **THE COURT:**  There does not seem to be an issue,

5    though, temporally, between April 2016 and June 2018.  Is that

6    correct?

7              **MS. GOETZ-ANDERSON:**  That's correct.

8              **THE COURT:**  Okay.

9              **MS. GOETZ-ANDERSON:**  I mean, other than to the extent

10   that we had objections to other -- to the discovery requests --

11   you know, some specific discovery requests on different bases.

12             **THE COURT:**  Sure.  Okay.

13             **MS. GOETZ-ANDERSON:**  And one -- your Honor, if I may,

14   there were several extensions requested by both parties with

15   respect to the discovery request, so it's not an issue where --

16   you know, we actually, I think -- I believe served our

17   discovery requests first back in December.  Even after

18   mediation was unsuccessful, the EEOC requested several

19   extensions, which we agreed to, and then, you know, we

20   requested some extensions ourselves as well.  So, both parties

21   requested and received extensions on the discovery responses.

22             **THE COURT:**  Understood.  But even with the

23   extensions, defendants' were due by June 5th, 2020.  Is that

24   correct, Ms. Goetz-Anderson?

25             **MS. GOETZ-ANDERSON:**  I don't have the date.  That's

20

1    the date that we served our responses.  Yes.

2            THE COURT:  Okay.  So, my concern is when you say,

3    "as we continue to find documents," and I know there is an

4    ongoing opportunity to recover and to search for things, but

5    we're talking historical documents here between April 2016 and

6    June 2018.  Shouldn't that body of discovery have been turned

7    over?

8            MS. GOETZ-ANDERSON:  Yeah, and, your Honor, I

9    apologize if that led to some unclear -- unclearness there.  In

10   addition to this first set of requests for production that

11   we're working through now, the EEOC has since served a second

12   set of requests for production, which primarily -- which,

13   significantly, requested some ESI.  We are working with the

14   EEOC to try to come up with mutually agreeable search

15   parameters, custodians and search terms, so I think it's

16   possible that we will have some -- you know, to the extent --

17   hopefully, we'll be able to kind of nail down an agreement on

18   that, but I think that there -- you know, if possible, there

19   may be documents in there that we would agree are privileged,

20   or at least we would assert are privileged or work product,

21   that we would need to add to a privilege log later on.

22           THE COURT:  Okay.  So, Ms. Ringer, have the parties

23   talked about search parameters and key word searches or

24   custodians?

25           MS. RINGER:  We have, your Honor, and, if I may, with

21

1   respect to your question whether or not everything from, like,

2   the 2016 to June 2018, all those responsive documents had been

3   produced, you know, it's our position the answer is no.  And

4   the clearest example we have of that is the other defendant,

5   AppleOne, produced --

6           **THE COURT:**  Well, let me -- let me get this to ground

7   first, the issue about the search parameters, because it does

8   change the practicality of the scope of documents that may be

9   able to collect -- be collected.  And did the parties, prior to

10  these discovery responses were due, discuss search parameters

11  and custodians?

12          **MS. RINGER:**  No, your Honor.  This -- we discussed

13  the search parameters in October and September of this year

14  after we served our second set of discovery, which were a

15  little more exhaustive than the first set.  So, Cardinal Health

16  asked us to meet and confer about that, and we met at the end

17  of September, and then they (indisc.; audio glitch) us to

18  propose a -- the EEOC to propose the search parameters, and we

19  asked for more information about their information systems.  We

20  haven't received any information about those, but we did still

21  try to offer some search parameters and suggest where to start.

22  We offered search terms and custodians, and Ms. Goetz-Anderson

23  responded that they would search emails specifically back to

24  2016 for specific custodians and specific search terms, and we

25  responded a few days after that regarding our proposal and

22

1  asked for more information about their information systems and

2  said that, you know, we agreed that that's a good place to

3  start, but that's not complete; that's not going to pull all

4  the responsive documents.

5          THE COURT:  I'm sorry.  I was just looking at Rule 34

6  real quick here.

7          (Pause)

8          MS. RINGER:  And it's my recollection there is no

9  sort of objection to the first set of discovery on the basis of

10 electronic -- you know, like undue burden related to finding

11 electronic discovery.

12         THE COURT:  Well, it could be undue burden.  I mean,

13 that is a valid objection in a situation if a Rule 34 RFP is

14 sent out and if it seeks -- again, I don't know the specificity

15 of the requests that were propounded, but it would be a

16 burdensome objection saying, "If you want us to search our

17 entire company for this thing, we can't do it."  Now, usually

18 what that entails is a statement or something from somebody

19 knowledgeable within the company indicating why they can't do

20 it, at least in the meet-and-confer process, because when it

21 comes to a judge, the first thing a judge, at least -- not

22 the -- the first thing I often time ask is, "Well, if it's

23 burdensome, based on what?"  And I ask -- you can't just say,

24 "Oh, well, it's burdensome."  That's not good enough.  That's

25 not going to carry the day on a burdensomeness objection.

1   Like, there's going to have to be, "Hey, if we search this term

2   in our ESI, or in our databases, we're getting, you know, four

3   million documents, or four million emails," and -- or -- and

4   something of that nature, and then usually there is a

5   conversation between the folks indicating what are the terms

6   and then what type of documents are we looking at deduped,

7   unique or -- or however the term the folks want to use, and you

8   proceed in that regard.

9           So, with respect to these documents -- but I'm

10  concerned that the completion wasn't -- didn't happen, at least

11  with respect to April 2016 and June 2018, and if there's more

12  documents that are now coming out, I am concerned about that,

13  Ms. Goetz-Anderson.

14          **MS. GOETZ-ANDERSON:**  Your Honor, we objected to

15  this -- you know, I don't know if there is a specific RFP

16  you're referring to, but we did --

17          **THE COURT:**  I'm looking at Number 3 on the email, and

18  I don't have the particular RFP either.

19          **MS. GOETZ-ANDERSON:**  Okay.  So, your Honor, for

20  example, we've produced -- you know, that they requested -- I

21  think that this is sort of further down on our list, but they

22  requested, you know, documents relating to any complaints or

23  investigations of complaints of racial harassment, which we

24  then did produce the investigation files that we've got, which

25  included emails and whatnot.  We -- to the extent that they're

24

1  seeking, you know, items beyond those investigation files, like

2  I said, we've reached out to try to work with them to come up

3  with reasonable search parameters, because we can't -- you

4  know, Cardinal Health has something like 30,000 employees.  We

5  can't easily search every employee's, you know, emails for a

6  particular term.

7          Another issue that we have here, your Honor, is that

8  they haven't -- you know, only through discovery have we

9  learned the identities of the 40 or 50 or so claimants on whose

10 behalf that they are seeking relief.  So, it's hard for us to

11 be in a position -- you know, for instance, if we didn't know

12 that this person was going to be a claimant, to search for

13 documents that may be related to that person.  Do you see what

14 I mean?

15         **THE COURT:**  I do --

16         **MS. RINGER:**  May I respond --

17         **THE COURT:**  -- but I guess -- so, was the objection

18 made with respect to these documents that it would be burden,

19 overly burdensome to produce them?  I'm sure it's boilerplate,

20 but at least specifically?

21         **MS. GOETZ-ANDERSON:**  Yeah.  I'm looking at -- I think

22 this is (indisc.; audio glitch) productions 6 through 11.  We

23 did object that it was overly broad, seeks information that's

24 not relevant, and is not proportionate under Rule 34.

25         **THE COURT:**  Okay.  That does open the door, then, to

25

1    discuss the ESI (indisc.; audio glitch) that are going to be

2    agreed to by the parties.  Do the --

3            **MS. RINGER:**  I don't see that objection, your Honor,

4    to be clear, and --

5            **MS. GOETZ-ANDERSON:**  I'm looking at --

6            **MS. RINGER:**  -- I just take issue with some of the

7    representations that Jamie made regarding -- or Ms. Goetz-

8    Anderson made regarding when they produced documents, the scope

9    of them, and the representations about when they discovered the

10   identities of our class members.

11           **THE COURT:**  Okay.  I mean, I guess the identity of

12   class members, I don't know what that, at this point -- how

13   that's relevant.  I'm just more concerned about the general

14   steps taken.

15           When do you think the parties would be able to agree

16   on ESI search terms?  Have those negotiations started,

17   Ms. Ringer?

18           **MS. RINGER:**  They've started, but Ms. Goetz-Anderson

19   hasn't provided us information regarding their information

20   systems.  They recently disclosed to us a week ago that they

21   still have an autodeletion policy in place at the at-issue

22   facility.  And, you know, our requests have -- we have agreed

23   to narrow them some.  You know, it's narrowed to one facility,

24   not 30,000 employees.  It's narrowed to a specific timeframe.

25   And we have discussed -- you know, we have started to discuss

26

1    search terms.  Ms. Goetz-Anderson is -- has only agreed to look

2    at emails, and we agree that that's a good start, but it may

3    not cover all the requests from the first set or the second

4    set.  And we have received copies of complaints about racial

5    slurs from AppleOne that include Cardinal Health managers on

6    these emails that have not been produced, and these emails are

7    from 2016.  So --

8              **MS. GOETZ-ANDERSON:**  Your Honor, if I can --

9              **MS. RINGER:**  -- we think that this -- this should

10   have been complete by now.

11             **MS. GOETZ-ANDERSON:**  Your Honor, if I can --

12             **THE COURT:**  Well --

13             **MS. GOETZ-ANDERSON:**  -- respond to that.  I'm not

14   sure off hand what emails Ms. Ringer is referring to, but we

15   did reach out to try to get the process started about, you

16   know, coming to mutually agreeable search parameters.  The

17   EEOC -- you know, we've had a couple back and forth on that.

18   You know, I think where we last left off, the EEOC -- you know,

19   their suggestion was essentially for a first round.  I think we

20   would object that, you know, it is not reasonable and unduly

21   burdensome on us to, you know, do several rounds of ESI search,

22   collection, and review.

23             With respect also to the autodeletion piece of

24   things, just to be clear, that's the company's policy with

25   respect to anyone who is not subject to a litigation hold.

27

1  People who are subject to a litigation hold, their emails are,

2  obviously, not deleted after six months.

3          THE COURT:  Well, we'll get to -- we'll get to that

4  issue.  I have written some orders in that, so I wanted to -- I

5  wanted to kind of get into that a little later.  But it's hard

6  for me -- what number of RFPs are we looking at with respect to

7  category number three, Ms. Ringer?  It's hard for me to kind of

8  look at those or think about those in the abstract.  How many

9  RFPs are we talking about here?

10          MS. RINGER:  If we're -- you know, if we're just

11  talking about the first set of discovery, I mean, the main

12  requests are six through 11, which request complaints about

13  race, harassment, or discrimination and related documents,

14  investigative -- investigatory documents.

15          THE COURT:  And Ms. Goetz-Anderson's represented that

16  they have produced the internal investigation files related to

17  those.  Is that correct, Ms. Goetz-Anderson?

18          MS. GOETZ-ANDERSON:  Yes.

19          THE COURT:  Okay.  And with respect to the other sets

20  of documents, what I would like to do is, if the -- if you

21  could send me -- why don't I get it from Ms. Goetz-Anderson.

22  If I can get the RFPs from the first set, including the

23  objections --

24          MS. GOETZ-ANDERSON:  Sure.

25          THE COURT:  -- I can -- I can read through them, I

 1    can take a look at them, and we can have a continued hearing in

 2    this regard, and then we can go through them one by one to see

 3    what the status is.  If you could email those to me by close of

 4    business -- or to my courtroom deputy by close of business

 5    today, Ms. Goetz-Anderson?

 6            And just to be clear, Ms. Ringer, we're talking RFP 6

 7    through 11?

 8            **MS. RINGER:**  Yes, your Honor.

 9            **THE COURT:**  Okay, very good.  So we'll get that, and

10    I'll take a look at those.  And then we can get on the horn --

11    or on the video.  And we can those, and see what the holdup has

12    been.

13            Ms. Goetz-Anderson, when can you provide ESI -- well,

14    let me back up.

15            Ms. Ringer, did you provide particular terms that you

16    would like searched -- the EEOC would like searched?

17            **MS. RINGER:**  We did provide terms with respect to the

18    second set of discovery.

19            **THE COURT:**  What about the first set?

20            **MS. RINGER:**  We did not provide terms for the first

21    set.

22            **THE COURT:**  Okay.

23            **MS. RINGER:**  They didn't request it.

24            **THE COURT:**  Well, I'm cutting -- I'm trying to kind

25    of cut one step out here, which is going to be -- they're going

29

 1    to come with burdensome, and we'll -- you know, they'll say,

 2    "Hey, too many e-mail databases or accounts to search," *et*

 3    *cetera.*  Because it is -- all right.

 4            And what you're probably going to get is -- has been

 5    my experience -- is Defendants will give you a set of terms,

 6    which Plaintiffs may view as too narrow.  And then there'll be

 7    more terms that go back from the EEOC.

 8            How about this:  Can the parties exchange terms so

 9    the first set of RFP's ESI, by close of business on Friday,

10    both parties exchange it at the same time, so there's no --

11    there's no gamesmanship in that regard?

12            And then what we could do is, we can talk about the

13    terms and how the search would occur and what is feasible.

14            And, Ms. Goetz-Anderson, what I would like to hear,

15    at the next hearing, in this regard is, if there's any

16    limitations with respect to searchability within Cardinal, you

17    have had a chance -- or somebody from your team has had a

18    chance to put somebody at Cardinal who --

19            **MS. GOETZ-ANDERSON:**  Uh-huh.

20            **THE COURT:**  -- is knowledgeable about the computer

21    systems, and why something is not doable versus why something

22    is doable.  Because that's going to play into the burdensome

23    analysis for me.

24            **MS. GOETZ-ANDERSON:**  Okay.

25            **THE COURT:**  All right?  So terms will be -- let's do

30

1    it 5:00 p.m., Pacific -- 5:00 p.m., California time, on Friday,

2    the terms will be exchanged.

3              **MS. GOETZ-ANDERSON:**  Okay.

4              **THE COURT:**  Okay?  All right.

5              **MS. GOETZ-ANDERSON:**  Your Honor, at that time, should

6    we also include, not just the search terms, but also the -- our

7    proposed custodians?

8              **THE COURT:**  You can, sure.  I mean, anything that

9    kind of moves the ball forward.

10             And that depends.  Certain computer systems --

11   basically it's -- you know, it would be -- the administrator

12   can -- is sometimes not limited, you know --

13             **MS. GOETZ-ANDERSON:**  Uh-huh.

14             **THE COURT:**  -- what's searchable now.  E-mail is --

15   it's a beast to search.

16             So it sounds like the EEOC is limiting its focus, at

17   least to some degree, on a particular facility.  But I don't

18   want to speak for them.  Because there may be an issue where

19   it's a specific facility, but then the facility rolls up to a

20   particular region.  And the region then can go up to the

21   national entity.

22             And so, if the custodians are limited to -- we lost

23   Ms. Ringer.  Let's give her a second, please.

24             **MS. GOETZ-ANDERSON:**  Sure.

25             Your Honor, she's calling in.  She said she's having

1    connectivity issues.

2         **THE COURT:**  Understood.  So as soon as she can

3    identify herself as being online, we can continue.

4         **MS. GOETZ-ANDERSON:**  Great.  Thank you.

5         **MS. RINGER:**  Hello, your Honor.  Can everybody hear?

6         **THE COURT:**  Yes, we can, Ms. Ringer.

7         Okay.

8         **MS. RINGER:**  Hi, everybody.  This is Andrea of the

9    EEOC.  And my Internet went down, so I'm calling in.  I'm so

10   sorry.

11        **THE COURT:**  That's okay.

12        So we were talking about the custodians.  And I

13   don't -- you can exchange -- exchange custodians.  I think if

14   it moves the ball forward, that would be helpful too.

15        Ms. Ringer, what do you think about that?

16        **MS. RINGER:**  Custodians are a good -- you know, a

17   good way -- place to start.  We had already exchanged

18   custodians.  So I think it's our position that -- that there

19   are going to be responsive documents outside of those

20   custodians for specific requests.

21        **THE COURT:**  Well, and I think I see where you're

22   getting.  I could see some terms, some words, I don't care

23   where they're used, if there is --

24        **MS. RINGER:**  Yeah.

25        **THE COURT:**  -- it may be useful.

32

1          So there may be a situation where certain terms are

2     going to have to be searched broadly.

3          And, Ms. Goetz-Anderson, if your claim -- if your

4     client is claiming that that's going to be too burdensome, we

5     need to know why.

6          **MS. GOETZ-ANDERSON:**  Okay.

7          **THE COURT:**  Okay.  So if you want to exchange

8     custodians, that's fine.  But also there can be an

9     understanding that certain terms are going to be custodian

10    agnostic.

11         **MS. RINGER:**  Thank you.

12         **THE COURT:**  All right.  And then what I would like to

13    see is a substantial complete by date for the first set of RFPs

14    by both parties outside of the ESI.

15         That is going to be discussed shortly -- I mean,

16    hopefully within the next week or so.  And how long do you

17    think Cardinal would be able to meet a substantial compliance

18    by date for the first set of RFPs?

19         **MS. GOETZ-ANDERSON:**  Outside of the ESI piece, your

20    Honor?

21         **THE COURT:**  Yes.

22         **MS. GOETZ-ANDERSON:**  Can we have 21 days?

23         **THE COURT:**  Let's give it 14.

24         **MS. GOETZ-ANDERSON:**  Okay.

25         **THE COURT:**  And I say that just because I acknowledge

1    the time that you'll need for your briefing on the temporal

2    issue, which will endeavor to turn around as quickly as

3    possible.  Because this discovery date is coming upon us pretty

4    darn fast.

5              And I'd like -- I don't know if discovery has been

6    propounded on EEOC.  But can the EEOC meet that 14 days as

7    well -- substantial compliance by date for the first set of

8    RFPs that were propounded by --

9              **MS. GOETZ-ANDERSON:**  Would you like us to -- your

10   Honor, to just provide a statement that we have substantially

11   complied by that date?

12             Because it's my understanding that we --

13             **THE COURT:**  Yeah.  I mean, you don't have to

14   provide --

15             **MS. GOETZ-ANDERSON:**  (Indiscernible).

16             **THE COURT:**  You don't have to provide it to me.  You

17   can provide it by a letter to the other side.

18             **MS. GOETZ-ANDERSON:**  Okay, sure.  Yeah, we can

19   provide that letter.  No problem.

20             **THE COURT:**  Okay.  So with respect the RFP number --

21   Issue Number Three, the parties will exchange terms and

22   custodians by 5:00 p.m., on California time.

23             And the parties will provide a substantial compliance

24   by state -- substantial compliance statement from them, to the

25   other side, by October 27th, related to the first set of RFPs.

34

1          And, also, Ms. Goetz-Anderson will e-mail to my

2    chambers, CC'ing Plaintiff's Counsel, the RFPs at issue,

3    particularly in 6 through 11, so that I can take a look at the

4    corrections made.

5          **MS. RINGER:**  Your Honor, if I may, the Issue Three,

6    with respect to privilege and what they have provided us,

7    Cardinal Health has produced a redaction log that documents

8    things that were blacked out of it.  They are HRM

9    investigation -- investigative files.

10         They haven't provided a privilege log that shows what

11   they're withholding.  And we did learn, through their recent

12   discovery responses, that they are withholding investigative

13   documents on attorney-client privilege and work product that

14   relate to Cardinal Health investigation of the actual EEOC

15   charges filed in this case.

16         I mean, aside from the -- you know, that we take the

17   position that they waive that privilege by invoking their

18   Ellerth-Faragher defense.

19         At bare minimum, those documents should have been put

20   on a privilege log.  So we would like to see them on this

21   privilege log they intend to provide.

22         **THE COURT:**  Okay.  And, Ms. Goetz-Anderson, you want

23   to speak to that?

24         **MS. GOETZ-ANDERSON:**  I don't know if Ms. Ringer is

25   referring to the second set of RFPs -- which I think are not at

35

1    issue here.

2            But we're happy to update our privilege log and

3    provide it by this October 27th substantial compliance date.

4            **MS. RINGER:**  To be clear, your Honor, the documents

5    were explicitly requested in the second set; that they're

6    encompassed within our request for all complaints about race

7    harassment and all investigate -- all investigative documents

8    relating to all complaints about race harassment and

9    discrimination.

10           Those are the -- that's the first set of discovery.

11           **THE COURT:**  Is there a temporal aspect to that, that

12   is going to be encompassed by this briefing that I'm going to

13   receive?

14           **MS. RINGER:**  For the --

15           **THE COURT:**  First set of RFPs?

16           **MS. RINGER:**  Well, they're not specific -- for that

17   specific, I mean, instance, the charges of discrimination were

18   filed before 20 -- they were file in 2017.

19           So I don't think that there are temporal objections,

20   at least relate to that piece.

21           **THE COURT:**  Okay.  Ms. Goetz-Anderson, I am bothered

22   by this.  The 20 -- up until 2018, those documents -- and they

23   may well be protected by attorney work product or attorney-

24   client privilege.

25           But why won't those -- if they were collected, why

36

1   weren't those put on a privilege log in a timely fashion?

2          **MS. GOETZ-ANDERSON:**  Your Honor, I think that

3   Ms. Ringer is referring only to the -- you know, the documents

4   relating to the company's response to the particular EEOC

5   charge -- like after the charge had been filed -- and not

6   relating to responses to particular complaints of

7   investigation, which is what we understood these RFPs 6 through

8   11 to be relating to.

9          But, like I said, we are more than happy to, you

10  know, log our communications or any documents we're withholding

11  for work product or privilege relating to our response to the

12  EEOC charge.

13         **THE COURT:**  Why don't I do this:  I'm going to --

14  when I get a copy of the RFPs 6 through 11 and the objections

15  by close of business today, I anticipate having a (computer

16  blip) after I read through them, having another video hearing

17  on this, either Thursday or Friday of this week, addressing

18  those issues.  Okay?

19         So let me take a look at that, Ms. Ringer.  It's hard

20  for me to speak -- think about it in the abstract until I have

21  the RFPs and the objections in front of me before I can

22  intelligently weigh in.  Okay?

23         **MS. RINGER:**  Thank you.

24         **THE COURT:**  So I think we'll wait on that, on the

25  privilege log.  And whether they're waived or not, we can take

37

1    a look at that.  But I need to see what the RFPs have.

2              And then RF -- let's go to Issue Number Four, which

3    relates to 11 Cardinal Health managers and documents related to

4    them.

5              **MS. RINGER:**  Sure.  Your Honor, so number -- Issue

6    Number Four just relates to our request for --

7              **THE COURT:**  Ms. Ringer, I'm sorry, you're a little --

8    your voice is a little low.  Can you please speak up a little

9    louder?

10             **MS. RINGER:**  Can you hear me better now?

11             **THE COURT:**  Yes.  Thank you.

12             **MS. RINGER:**  Okay.  I'm sorry.

13             **THE COURT:**  That's okay.

14             **MS. RINGER:**  So Issue Number Four relates to the

15    personnel records we requested for Cardinal Health managers at

16    the specific facility, in Ontario, most of which our claimants

17    allege they made verbal complaints to about race harassment.

18             And so Request for Production Number Five seeks their

19    personnel file.

20             And we have met and conferred about this, and agreed

21    to narrow these requests -- or this request to documents that

22    we think that are most relevant.

23             And Cardinal Health did provide a supplemental

24    response in -- sometime in August.

25             They have not clarified what has been withheld.  And

1    we would like a clarification in that regard.

2           We also learned, during deposition testimony

3    recently, that the -- these Cardinal Health managers regularly

4    received performance evaluations.

5           And there was a rather intensive contract going on

6    during the time frame in which we believe the hostile work

7    environment was created.  There was a very high-volume

8    contract.  They doubled their workforce.

9           And we do -- we just think it would be helpful to see

10   their performance evaluations.

11          So we're simply asking to know what was withheld, and

12   also that it -- that they supplement their production and

13   provide performance evaluations as well.

14          **THE COURT:**  Is there a temporal aspect to this set of

15   documents as well, Ms. Ringer?

16          **MS. RINGER:**  I'm not clear if Cardinal Health is

17   withholding documents based on its, you know, temporal

18   objections; although, I -- it's kind of my understanding that

19   they did withhold documents in response to all the requests on

20   that basis.

21          But, you know, we're -- yeah.  I don't think I'm

22   aware of --

23          **THE COURT:**  Okay.  Ms. Goetz-Anderson --

24          **MS. RINGER:**  -- (indiscernible) about that.

25          **THE COURT:**  -- is Cardinal withholding any documents

39

1   on the temporal basis with respect to RFP Number Five?

2           **MS. GOETZ-ANDERSON:**  We have not, your Honor.  And

3   just to clarify.

4           So the original discovery request, as for the full

5   personnel files -- which we objected to --

6           **THE COURT:**  I'm talking --

7           **MS. GOETZ-ANDERSON:**  -- in --

8           **THE COURT:**  Ms. Goetz-Anderson, what requests?

9           **MS. GOETZ-ANDERSON:**  The person -- the full personnel

10  files -- which we objected to.

11          In the course of our meet-and-confer discussions, the

12  EEOC agreed to limit this to personnel records relating to

13  discipline, EEO training, acknowledgements of receipt of

14  employee handbooks or other EEO policies and procedures, and

15  complete procedures, and any complaints filed against them.

16          So that's what we have produced -- which we didn't

17  withhold any documents, pursuant to that agreement.  Sitting

18  here today is the first time that we hearing that the EEOC is

19  also interested in getting performance reviews.  That's not

20  something that we discussed or agreed upon.

21          **THE COURT:**  Ms. Ringer?

22          **MS. RINGER:**  That's -- with respect to the narrowing

23  of our request, we did clarify -- in meet-and-confer

24  correspondence, at least a few weeks ago -- that we were

25  seeking performance evaluations, and that we needed to know

40

1    what had been withheld, and I need it to be clarified in their

2    amended responses.

3            **THE COURT:**  Let me -- this is -- the personnel files

4    are something we see in other cases.  And certain issues like

5    their tax withholding, their other medical issues, and things

6    like that -- those aren't going to be produced.

7            If it's narrowed down to EEO training and as it

8    relates to essentially the issues of -- I'll use just the term

9    broadly -- discrimination and the training associated with that

10   and any complaints associated with that, from a stance of

11   performance reviews -- I just --

12           I'm seeing that the parties haven't reached a meeting

13   of the minds as to what is being sought.  And so I'm struggling

14   with that.

15           So are you guys -- is EEOC -- is the EEOC seeking

16   performance reviews?

17           **MS. RINGER:**  We did so in our original requests for

18   production, and we narrowed it.

19           And then we didn't get a clarification about what was

20   being withheld.  And we said -- and then we notified Cardinal

21   Health that we'd also like performance evaluations.

22           Maybe they didn't notice that it was included in our

23   correspondence or in our list.

24           We are seeking them.  It's not -- you know, this

25   isn't the end-all-to-be-all as far as our request.  But these

41

1   managers were responsible for a very high volume of --

2           **THE COURT:**  I got it.

3           **MS. RINGER:**  -- (indiscernible).

4           **THE COURT:**  I mean, I had it -- I'm sorry.

5           **MS. RINGER:**  Okay.

6           **THE COURT:**  A little frustration here.  It's like I

7   don't know what to rule on.

8           And part of it may be that EEOC is saying they asked

9   for it.  Defendants are saying, "We don't believe they asked

10  for it."

11          With respect to employee files of these 11 folks, I

12  don't believe they have to, under 33 -- I'm sorry -- 34, tell

13  you if they're withholding something if you guys have agreed to

14  not seek it.  So --

15          **MS. RINGER:**  It wasn't -- sorry, your Honor, go

16  ahead.

17          **THE COURT:**  No, no.  Go ahead.

18          **MS. RINGER:**  It's hard to see you, so hard to know

19  when you're speaking.

20          We're not asking them to tell us how we withheld tax

21  documents.  It's just we would like to know, are they

22  withholding -- and it sounds like Ms. Goetz-Anderson said that

23  they're not.

24          But we just would like that clarified in their

25  amended responses, what, if anything, are being withheld.

42

1           Their recent production was rather surprising that it

2    included a new complaint about racial slurs that a manager had

3    failed to report.

4           And I was shocked that that was just being produced

5    as part of a personnel file.  And I just -- we've seen so many

6    instances where --

7           **THE COURT:**  Well, this goes back --

8           **MS. RINGER:**  -- (indiscernible).

9           **THE COURT:**  This goes back to my initial thing.  It's

10   like I can only tell you folks to follow the rules.  Right?

11          I mean, if you are seeking documentation -- and this

12   is -- that happened in discovery, that, "Oh, we want

13   everything," and then you negotiate something more narrow,

14   versus writing a particularly narrow RFP that may leave

15   something on the table, you know, one is easier to enforce than

16   the other.

17          **MS. RINGER:**  Uh-huh.

18          **THE COURT:**  Here, if you're seeking all their

19   personnel files in its entirety, that seems to be problematic

20   to me.  And I'm not in the business of redlining RFPs.

21          If the parties agree to narrow it on their own,

22   that's fine.  I encourage that.  All Judges encourage that.

23          But we're trying -- I'm trying to figure out -- if

24   you want me to ask them, to say, "What are you withholding that

25   hasn't been agreed to be withheld?" -- is that what you're

1    asking me to say -- ask?

2             **MS. RINGER:**  We're asking just that, in their amended

3    response, that they affirm that they have -- within the

4    confines that the parties have agreed to, that they have

5    provided all the responsive documents.

6             **THE COURT:**  So that's going to come up in the

7    substantial compliance statement that they're going to provide.

8             **MS. RINGER:**  Yeah.

9             **THE COURT:**  Okay.  So I think that takes care of

10   Number Four.

11            And if there's anything in there that's attorney-

12   client privilege or attorney work product, it has to be on a

13   privilege log.  And if there's statements -- case law, at least

14   in the Ninth Circuit is, it's highly disfavored to redact

15   irrelevant information, unless it's of such a personal nature.

16            An example I'll give is, where an e-mail is between

17   two colleagues, where they were talking about the health of the

18   child who had cancer; that sort of stuff of that personal

19   nature.

20            The Ninth Circuit does really disfavor redacting

21   irrelevant inform -- what one party may consider irrelevant

22   information from an otherwise relevant document.

23            Just to put that out there.  So if there's sort of

24   like blacked out portions of this, there better be a darn good

25   reason.

44

1          Usually, it's a --

2          **MS. GOETZ-ANDERSON:**  Your Honor --

3          **THE COURT:**  -- privacy or something of a very

4    personal nature that has no relation to the case.

5          **MS. GOETZ-ANDERSON:**  Your Honor, just to clarify, the

6    personal records that we agreed to produce and actually

7    produced, I don't believe that there are any redaction in

8    those.

9          **THE COURT:**  Okay, very good.  So it sounds like the

10   substantial compliance statement, by October 27th, is going to

11   cover this aspect.

12         All right.  Number Five.  And this, again, goes to

13   RFP 6 through 11.

14         **MS. RINGER:**  Yes, your Honor.  Would you like me to

15   speak to it?  We've address this a little bit here.  But these

16   are -- this is -- well, we have discussed it quite a bit.

17         These are Requests 6 through 11, where the EEOC seeks

18   documents relating to complaints about race harassment,

19   discrimination, and related documents -- investigation-related

20   documents communications.

21         And it's -- you know, the temporal scope is quite

22   relevant here.  It's 2016 through the present.

23         Cardinal Health originally objected, in their June 5,

24   2020 responses, and didn't produce any responsive documents.

25         Eventually, after we met and conferred, and we had to

45

```
 1   send the meet-and-confer letter and have a few discussions

 2   about it, they produced responsive documents for April 2016

 3   through 2018.

 4        And those were limited to their human resources

 5   investigation files and any e-mails that Ms. Goetz-Anderson was

 6   referring to before were embedded within the human resources

 7   files.

 8        Those records were heavily redacted, so much so that

 9   entire statements were blacked out.  Statements of our

10   claimants were blacked out.

11        There was no redaction log provided.  And they

12   substantially altered the -- well, you couldn't tell the

13   context of these documents.  And in some cases, it appeared to

14   alter the meaning of the document itself.

15        And after that, they -- you know, Cardinal Health

16   agreed to provide those documents, but only under attorney-

17   client -- or attorneys' eyes only, sans redactions.  And that's

18   how we're able to evaluate the -- the redactions themselves.

19        Since then, we have discussed the redactions back and

20   forth during depositions of Cardinal Health managers before and

21   after they refused to remove the redactions or the attorney

22   eyes only designations, which the doc -- the information that

23   was redacted was much more so than what you described -- the

24   sensitive medical information.

25        Eventually, they -- I think it was about two weeks
```

46

```
1    ago, they -- Cardinal Health removed the redactions and

2    provided a redaction log.

3              There are documents that -- as I mentioned before --

4    that we believe Cardinal Health is withholding based on

5    privilege.

6              And, simultaneously, they are asserting their

7    affirmative defenses under Ellerth and Faragher, that they

8    took -- basically, that Cardinal Health took reasonable steps

9    to prevent and correct race discrimination, putting their

10   investigations at issue.

11             Not all of those investigative documents have been

12   produced to the extent that Cardinal Health is going to

13   continue to, you know, take that position, that it took action

14   in response to complaints, and that it took steps to prevent

15   and correct once they received complaints.

16             And we're entitled to that information.  It's so

17   important.

18             We need all investigatory documents, including things

19   that are outside of this human resource discriminate -- you

20   know, our belief that things were not investigated when they

21   didn't reach the human resources individuals, who were located

22   mostly offsite.  So it's particularly concerning.

23             We haven't received anything outside of there.  And

24   that goes to the company e-mails that we had talked about that

25   we know exist from AppleOne.
```

47

1          So that their production is incomplete.  And, you

2     know, we believe that there --

3          **THE COURT:**  I'm sorry, Ms. Ringer, when you say --

4     what is "Apple One"?

5          **MS. RINGER:**  I'm sorry.  That's the other Defendant.

6     They're the staffing agency that placed most of our claimants

7     to work for Cardinal Health.  So --

8          **THE COURT:**  Okay.

9          **MS. RINGER:**  -- they communicated with Cardinal

10    Health about some complaints our claimants made about racial

11    slurs that have not been produced by Cardinal Health.

12         So the main issues are, you know, their com -- their

13    production is incomplete, and not just because of their

14    temporal scope objections.

15         And this information is so, so important.  It should

16    have been produced a long time ago, and that they can't -- they

17    can't use their invest -- say that they investigated like they

18    did -- they say they investigated these EEOC charges, but, at

19    the same time, claim that that investigation is privileged.

20         **MS. GOETZ-ANDERSON:**  Your Honor, can I respond to

21    that?

22         **THE COURT:**  Yes, please.

23         **MS. GOETZ-ANDERSON:**  Just to clarify a little bit on

24    the timing, we produced the investigation files initially, kind

25    of through informal discovery for purposes of mediation.

48

1          When we produced it in that aspect, we did redact any

2    allegations or information that did relate to allegations of

3    race harassment or discrimination.

4          We have subsequently reproduced the materials in

5    formal discovery.

6          The EEOC asked that we remove the redactions.  And

7    the parties agreed that we would remove the redactions for the

8    non, kind of, relevant information, and that we would market --

9    mark them as attorneys' eyes only.

10         So the EEOC did agree to that, so that's what we did.

11         The EEOC subsequently came back and said that they

12   wanted us to remove the AEO designation, which we did.

13         And there are -- I think out of the, you know,

14   hundreds of pages of investigation files, there are a grand

15   total -- I believe it's 12 pages that have very minor

16   redactions, all of which relate to medical information.

17         Or there was one issue, in one of the investigations,

18   where there was some unsubstantiated allegations of sexual

19   misconduct against an employee, that we redacted some details

20   of that for her privacy.

21         And those are on the privilege log.

22         With respect to documents outside of the -- you know,

23   the human resources -- some of the -- outside of the

24   investigation files, to the extent that any exist, like I said,

25   we have -- you know, we are willing to do with the ESI

49

1   searches.  I think that's, you know, sort of what we've already

2   discussed about the parties exchanging search terms for the

3   ESI, you know, by the end of this week.

4           In particular, one of the kind of search parameters

5   that we've already suggested is e-mails between our supervisors

6   and the relevant folks at AppleOne.

7           And so it's not that we're, you know, withholding

8   anything or that we're refusing to produce it.  We're just

9   trying to get to an agreement so that our -- we're not, you

10  know, having to go back and continue to do numerous e-mail

11  collections, reviews, and, you know, searches and productions.

12          So we have offered to do that.  (Computer blip).  You

13  know, I don't know what Andrea's position on that is.

14          **THE COURT:**  So the way I read the particular RFP --

15  again, it's 6 through 11.  But the EEOC is seeking complaints

16  investigations reporting other communications related to race

17  harass -- race harassment and discrimination.

18          And I guess it plays into the particular affirmative

19  defense Defendants are raising, which is essentially, "Hey, you

20  can't hold us liable because we handle these things seriously

21  and we investigate these things."

22          In order to counteract that, Plaintiffs are going to

23  seek instances where you didn't.

24          Now, I don't know about how Cardinal is set up, in

25  the sense that, if they're -- let's say a worker notifies their

50

1    supervisor; the supervisor just sits on it, and nothing

2    happens.  And if they then speak to that particular supervisor,

3    "Why didn't you?"

4          It's like, well -- you know, this is all -- I'm just

5    kind of conjure here.

6          It's like, "Oh, well, you know, human resources

7    didn't want to hear about it unless it met a certain

8    threshold."

9          I'm not saying this is what happened.  But that's the

10   sort of discovery that EEOC may be trying to get at to sort of

11   like poke holes in the affirmative defense.  So is there a --

12   well, I'm trying to think here.

13         It's a practically -- and I empathize with you,

14   Ms. Goetz-Anderson.  It's like trying to get the corporation --

15   how do they -- what steps do they take to collect all this

16   information, especially a big company.

17         **MS. GOETZ-ANDERSON:**  Our position is that any time

18   someone made a complaint to a supervisor, the supervisor was

19   required to report it to -- it's called the "ACC"; the Advice

20   and Counseling Center, I think is the acronym -- which is the

21   HR -- HR's system that Ms. Ringer is referring to.

22         And then that would be investigated, and appropriate

23   action was taken.

24         And we've produced those files already.

25         So in your example of what happens if someone makes a

51

1    complaint to a supervisor, and a supervisor doesn't do anything

2    about it, I mean, number (computer blip), that we would -- our

3    position, if that, you know, we don't believe that happened.

4          But to the extent that there is, there's -- I'm not

5    sure what it is that the EEOC is looking for us to produce.

6    Because, in that situation, there would be no -- no documents

7    to produce.

8          **THE COURT:**  And this is just another thing.  I looked

9    through the docket here.  There's no protective order in place

10   for discovery.

11         Do the parties anticipate filing something of that

12   nature to allow for more free flowing discovery?  I don't know.

13         Ms. Ringer?

14         **MS. RINGER:**  We don't anticipate entering into a

15   protective order.  It's generally considered -- the Commission

16   prefers not to.  And since they litigate in the public interest

17   and the public eye, and there are limited circumstances under

18   which we do.

19         I mean, I think with -- the parties have -- we have

20   not discussed, amongst the parties, like a 502 sort of order.

21   But we haven't -- I don't recall Cardinal (indiscernible) the

22   protective order.

23         **THE COURT:**  Okay.  So then my next question is, like

24   AEO --

25         **MS. GOETZ-ANDERSON:**  Your Honor, can I respond to

1    that?

2            THE COURT:  Sure.

3            MS. GOETZ-ANDERSON:  On a different issue, just last

4    week, we did raise that issue with the EEOC.  Granted, it was

5    on a different issue on producing employee contact information.

6            And the EEOC indicated that they were not agreeable

7    to entering into a protective order.

8            As far as like the AEO designation, the parties just,

9    you know, agreed to that informally without a protective order

10   in place.

11           But just sort of one more point on this, that, you

12   know, to the extent the EEOC is looking for (indiscernible)

13   saying that we didn't produce -- you know, to the extent that

14   they believe that people complained to Cardinal Health, and

15   Cardinal Health didn't do anything about it, we don't know who

16   they're talking about.  And the EEOC does know.

17           And, you know, that's part of our -- I think our

18   challenge here.

19           THE COURT:  So, Ms. Ringer, if you could craft the

20   order, what would it say?

21           MS. RINGER:  If I could craft an order to protect the

22   complaint records?  Is that what you're --

23           THE COURT:  Well, no.

24           MS. RINGER:  -- indicating, your Honor?

25           THE COURT:  I'm asking about -- I'm asking Number

1    Five.  You're saying that they haven't produced --

2            **MS. RINGER:**  Oh, I see.

3            **THE COURT:**  What do you want me -- if you could ask

4    for the order, what would it be?

5            **MS. RINGER:**  We would like Cardinal Health to confirm

6    that they've produced -- that they've done an exhausted search

7    for all responsive documents, and that anything that they're

8    withholding, based on privilege, be very, you know, clearly

9    outlined on a privilege log that complies with Rule 26.

10           Obviously, there's a temporal scope issue as well.

11   We think we're entitled to everything from 2016 to the present.

12           **THE COURT:**  I got that.

13           I'm sorry.  I don't mean to --

14           **MS. RINGER:**  We want beyond --

15           **THE COURT:**  I've already spent --

16           **MS. RINGER:**  -- the (indiscernible).

17           **THE COURT:**  -- an hour and 20 minutes on this thing.

18   Let's just -- I mean, I got that.

19           You're going to get -- two things is, there's going

20   to be a substantial compliance thing, and you guys are going to

21   talk about ESI, and we got the temporal aspect.

22           With respect to the remaining sorts of complaints,

23   investigations reports, and other communications relating to

24   race harassment and discrimination, what would you like the

25   order to say?

54

1              **MS. RINGER:**  We would also like the order to require

2  Cardinal Health to explain where they've searched for

3  documents, and certify that they have looked beyond their HR

4  system; that they have also considered things like text

5  messages and wherever else responsive documents could lie.

6              **THE COURT:**  Well, is it --

7              **MS. RINGER:**  We just need --

8              **THE COURT:**  Isn't that a topic --

9              **MS. RINGER:**  -- a certification --

10              **THE COURT:**  -- of a 30(b)(6) -- isn't that the topic

11  of a 30(b)(6) deposition?

12              **MS. RINGER:**  We do have that on our list of things to

13  discuss.  Yes.

14              **THE COURT:**  Okay.  And then the remedy in that

15  regard -- and I know it's time -- it's -- but, you know, these

16  are -- expenses can be then sought if it turns out that they

17  only looked at one silo and one location, you're going to get

18  those documents.

19              And then you're also going to get, perhaps, fees

20  associated with the fact that Counsel didn't do their job.

21              **MS. RINGER:**  And if your Honor would prefer that

22  route, I mean, we agree to that.

23              I think that the goal is just to find out -- to

24  confirm that everything that is responsive to these requests

25  has been produced or put on a privilege log.  That's a

1    substantial compliance piece that you refer to.

2              And, you know, the piece about finding out, from a

3    30(b)(6), what they did to find those documents, that will help

4    us confirm -- that or some other, you know, related remedy

5    would help us confirm that they did, in fact, you know, do an

6    exhaustive search and produce everything.

7              **THE COURT:**  Okay.  So how about this:  The

8    substantial compliance by October 27th will relate to the

9    production of the documents propounded by the first set of RFPs

10   by the parties and the privilege log that should have been

11   provided?

12             **MS. RINGER:**  Thank you.

13             **THE COURT:**  Ms. Ringer?

14             **MS. RINGER:**  That's acceptable to the EEOC.  Thank

15   you.

16             **THE COURT:**  Okay.  Ms. Goetz-Anderson?

17             **MS. GOETZ-ANDERSON:**  That works for us as well, your

18   Honor.

19             **THE COURT:**  Very good, okay.

20             So let's get to Number Six.

21             **MS. RINGER:**  Number Six.  That relates to Request for

22   Production 12 through 15, where we seek documents related to

23   Defendant's policies and procedures and trainings regarding

24   harassment and discrimination, from 2016 through the present.

25             The parties have already met and conferred about

56

 1   this.  And Cardinal Health has produced some documents

 2   following those meet-and-confers.

 3            This is just another instance where we're aware of

 4   documents that we're --

 5            **THE COURT:**  Well, let me ask you --

 6            **MS. RINGER:**  We know that they're --

 7            **THE COURT:**  Ms. Ringer?

 8            **MS. RINGER:**  -- incomplete.

 9            **THE COURT:**  Ms. Ringer, was --

10            **MS. RINGER:**  Yes.

11            **THE COURT:**  -- this part of the first RFP?

12            **MS. RINGER:**  Yes.

13            **THE COURT:**  First set of RFPs?

14            Okay.  So there will be a substantial compliance of

15   this as well.

16            **MS. RINGER:**  Yeah, yeah.  It really does relate to

17   most of the things on our list.

18            **THE COURT:**  Okay.

19            **MS. RINGER:**  We know that the content of trainings

20   were not produced.  I don't know if Cardinal Health takes the

21   position that's not included in our request.

22            I think that it is.  But we would like them to

23   produce the content of trainings provided to managers about --

24            **THE COURT:**  Well, and --

25            **MS. RINGER:**  -- harassment and discrimination.

57

1          **THE COURT:**  Ms. Ringer, has this been -- I'm sorry.

2    I don't mean to cut you off.  It's just I can't -- you can't

3    see me, so it's kind of like -- it's a little bit

4    (indiscernible).

5          **MS. RINGER:**  I'm sorry.

6          **THE COURT:**  So I don't mean to be rude.  So I

7    apologize for that.

8          But with respect to the training --

9          **MS. RINGER:**  Uh-huh.

10          **THE COURT:**  -- procedures and training, or

11   harassment, if they're going to comply -- if they're going to

12   say they complied, by October 27th, in response to this stuff,

13   and you guys discover things from other sources that they

14   haven't, that's sanctionable.  And we'll deal with it if it

15   comes up.

16          **MS. RINGER:**  Okay.

17          **MS. GOETZ-ANDERSON:**  And, your Honor, can I respond

18   to that?

19          **THE COURT:**  Sure.

20          **MS. GOETZ-ANDERSON:**  So we have produced -- you know,

21   with our initial production, we did produce policies and

22   procedures and some training materials from April 2016 to June

23   2018.  After meeting and conferring, we agreed to produce

24   policies and procedures and training materials in that post-

25   2018 period, which we have done.

58

1              This is the first time that the EEOC has raised the

2    issue of the actual content of trainings provided to managers.

3              So that's sort of a new issue.

4         **THE COURT:**  Let me say -- and, again, you guys need

5    to sit -- if there is a dispute, that's what I'm here for.  But

6    the dispute has to be fairly crystalized so that I can at least

7    go through it.

8              So if you guys have a disagreement about a particular

9    thing, get on the horn and talk to each other.  Get on the

10   phone -- get on video chat and talk to each other about these.

11   And then if there's a narrow subset of information that you

12   folks disagree about, that's when you come to me, okay?

13             And this should then be encompassed by the

14   compliance -- substantial compliance statement that's due on

15   the 27th.

16        **MS. GOETZ-ANDERSON:**  Your Honor, sorry.  I believe we

17   lost Ms. Ringer again.  Sorry.

18        **THE COURT:**  Oh, okay.  Thanks for pointing that out.

19        **MS. RINGER:**  I'm back.  I'm back.

20        **THE COURT:**  Okay.

21        **MS. GOETZ-ANDERSON:**  Oh, okay.  Okay, all right.

22   Sorry.

23        **MS. RINGER:**  I do disagree with Ms. Goetz-Anderson's

24   characterization of our meeting, since we did provide -- we did

25   raise this before, and we did provide our e-mails to the Court

59

1    in advance.

2            But, you know, as long as Cardinal Health is going to

3    substantially comply by that date, and produce all documents

4    relating to these trainings, not just lists of the names of the

5    trainings, we're happy with that.

6            **THE COURT:**  Okay.  Number 7.

7            **MS. RINGER:**  Number 7, we seek an employee list for

8    the specific Ontario facility between April 2016 through to the

9    present and this relates to the Request for Production Number

10   27.  Just a few days ago, Ms. Goetz-Anderson represented again

11   to us that they would be producing an employee list but that

12   they wanted to mark it confidential which we don't have a

13   problem with.  We just would like to see them actually produce

14   this employee list by the substantial compliance deadline.

15   There is a temporal scope issue here.  So it's my understanding

16   the list that's going to be produced will not include things

17   after June 2018.

18           But I think we just need confirmation from Cardinal

19   Health that it will be producing this information and to the

20   extent they're going to withhold contract information for

21   managers and Human Resources representatives that they need to

22   confirm that they'll accept service if we need to, you know,

23   take their deposition or something along those lines.

24           **THE COURT:**  Well, that second issue is not here

25   before me right now.  Let's stick to the documents that you're

```
 1   seeking.

 2              MS. RINGER:  Okay.

 3              THE COURT:  Employee lists, right?

 4              MS. RINGER:  Yes.

 5              THE COURT:  Managers, supervisors and HR overseeing

 6   warehouse workers at the Ontario facility between -- or

 7   beginning on April 2016.

 8              Ms. Goetz-Anderson, what's the status of that?

 9              MS. GOETZ-ANDERSON:  Your Honor, we did agree to

10   provide lists of warehouse workers plus managers, supervisors

11   and HR overseeing warehouse workers at this particular facility

12   between April 2016 and June 2018.  I had hoped that we would

13   have been able to produce that by now but we did have an issue

14   with the data on our end that when the report was populated, it

15   was only providing these folks' current or most recent job

16   titles, not the positions that they were in at the time -- at

17   the -- during that time period.  So we had to go back and sort

18   of manually add that information.  So that's what the delay is

19   though, you know, that's definitely something that we can

20   produce within the next few days and certainly by the

21   substantial compliance deadline.

22              THE COURT:  Okay.  Sounds like that should be taken

23   care of then.

24              Is that correct, Ms. Ringer?

25              MS. RINGER:  Yes, your Honor.
```

61

1          THE COURT:  All right.  Number 8.

2          MS. RINGER:  I think we -- if I can just clarify.

3          THE COURT:  Sure.

4          MS. RINGER:  We just need to understand the confines

5    of their list, their -- and we have discussed this at meet-and-

6    confers that their Human Resources representatives who were

7    involved in each investigation who were offsite and that we

8    were seeking that information but we just -- we need

9    clarification from them when they produce this list that -- of

10   what are they providing us.

11         THE COURT:  I don't know what that means.

12         MS. GOETZ-ANDERSON:  I'm not sure I understand what

13   that means either, your Honor.

14         MS. RINGER:  I think we just want to know how

15   complete their list is.  So if they're saying they are

16   providing a list of all HR -- Human Resources representatives

17   overseeing workers at this facility, are they saying -- are

18   they providing us only a list of those who were on site or were

19   they offsite?  Well, I mean, we've kind of run into this issue

20   a few times where Cardinal Health provides us something and we

21   don't know if it is complete.  So we have agreed to narrow it,

22   you know, per our discussions -- narrow this employee list.  I

23   just want to make sure that when they substantially comply that

24   they state what they have provided, just clarify.

25         THE COURT:  Again, I don't know what that means.

62

1    You've asked for certain information and if you believe that

2    they're playing games with the definition of that, you can

3    clarify with them --

4              **MS. RINGER:**  Okay.

5              **THE COURT:**  -- and if it's not done, you could say,

6    well, it's encompassed or it's not encompassed and then you can

7    come back to the Court but I don't --

8              **MS. RINGER:**  Okay.

9              **THE COURT:**  -- this is just not -- you're getting a

10   prophylactic substantial compliance date affirmation.  Okay?

11             **MS. RINGER:**  That's fine, your Honor.  Thank you.

12             **THE COURT:**  Okay.  Number 8.

13             **MS. RINGER:**  Number 8, we seek financial documents

14   from --

15             **THE COURT:**  I -- assume -- oh, Ms. Ringer, assume

16   I've read it.  I have my own notes on it.

17             **MS. RINGER:**  Okay.

18             **THE COURT:**  So just tell me your argument on it.

19             **MS. RINGER:**  Our argument is that we're entitled to

20   information reflecting Cardinal Health's current financial

21   condition and we previously agreed to narrow to 2017 through to

22   the present.  We're, you know, willing to narrow it even to

23   2018 through to the present.  Cardinal Health would produce the

24   information we narrowed our request to.  We just haven't argued

25   that yet.

1          **THE COURT:**  Okay.

2          **MS. GOETZ-ANDERSON:**  Your Honor, just a few

3     clarifications.  We -- you know, we were not aware that they

4     were agreeing to limit it to 2018.

5          **THE COURT:**  Oh, okay.

6          **MS. GOETZ-ANDERSON:**  And I don't think we agreed to

7     produce these particular categories of documents that they have

8     requested.  We still think that, you know, the only thing that

9     the financial information they're seeking is relevant to is

10    punitive damages and we still believe that what they are

11    seeking is far broader than what is necessary for purposes of

12    punitive damages in this case, particularly where Title 7 caps

13    punitive damages per person.

14         We also have an objection in our in our responses

15    regarding confidentiality, that this is -- it could be

16    confidential information and what they said before on a

17    separate issue, the EEOC has indicated that they're not willing

18    to enter into a protective order.

19         **THE COURT:**  Okay.  And this is -- again, this is my

20    own ignorance in situations involving a governmental agency

21    seeking to vindicate the rights of individuals.  I don't know

22    if there's a policy against protective order but there could be

23    an issue where, let's say, you are seeking financial

24    information in this type of nature.  At trial, it's a whole

25    different thing but up until this point at least in discovery,

64

1   is the EEOC's position that it does not enter into protective

2   orders to maintain the confidentiality of information obtained

3   during the course of discovery?

4           MS. RINGER:  We would be okay with a very limited

5   protective order on this subject that would cover the discovery

6   timeframe for financial information.  We just -- I know we

7   would need to see it and review it.

8           THE COURT:  It sounds like -- look, I have a form

9   "Protective Order" on my site that people use in all sorts of

10  civil litigation.  Why didn't EEOC propose it in the first

11  instance because it seems like it's more limited from your side

12  than it would be from Defendant's side?  What are you guys okay

13  with limiting?

14          MS. RINGER:  Okay.  What are we with okay -- okay

15  with limiting and what could we --

16          THE COURT:  On disclosure that it could be produced

17  under a protective -- that it can be produced without being

18  publicly available.

19          MS. RINGER:  That's a fine limitation.

20          THE COURT:  Okay.  So you guys will provide a -- do

21  you think you can provide a protective order in this regard by

22  the close of business on Friday?

23          MS. RINGER:  Yeah, we can do that, your Honor.

24          THE COURT:  All right.  Then with respect to the

25  financial documents themselves, there seems to be a substantive

65

1    disagreement regarding the scope of the documents aside from

2    the confidential (audio glitch), Ms. Goetz-Anderson?

3         **MS. GOETZ-ANDERSON:**  Yes, your Honor.

4         **THE COURT:**  Okay.  And that's based upon what

5    Defendants believed any punitive damages would be limited and

6    what would then have to be disclosed in that regard?

7         **MS. GOETZ-ANDERSON:**  Yes.  Your Honor, our position

8    that, you know, the only issue that these documents are

9    relevant to -- potentially relevant to is punitive damages

10   which relates to Defendant's net worth and which we think

11   things like profit and loss statements or, you know, statements

12   of cash flow are not necessarily relevant to.

13        **THE COURT:**  I am -- here's the only reason I'm

14   hesitating is because there's plenty of accounting tricks that

15   can be done to show the profitability of an entity and so the

16   question becomes where -- you know, like depreciation and

17   things of that nature can offset income and then you can say,

18   hey, we're running at a loss, so -- versus actual cash on cash

19   or -- what money do you folks have.

20        So maybe a statement of cash flow may be excessive.

21   I don't know.  I don't know how easy it is to get.  My guess is

22   if you guys are using a big, outside accounting firm, it's four

23   buttons and it's up and -- it's -- you can get it.

24        But I appreciate where you're coming from as well.

25   So what I would ask the parties to do is discuss what documents

66

 1   -- because different companies use different names, what

 2   documents are going to show the actual money that Cardinal has

 3   -- money and assets, not accounting balance sheet stuff.

 4          **MS. GOETZ-ANDERSON:**  Uh-huh.

 5          **THE COURT:**  That can be -- that can -- not skew but

 6   rather use to come out -- the numbers are calculated

 7   differently using the accounting rules versus, hey, here's how

 8   much money we have or how many assets we have.

 9          And I don't know -- perhaps, Ms. Goetz-Anderson, you

10   can talk to your client internally about what documents of

11   those nature would best show this but right now, it's like --

12   to me, it's -- the substantive argument -- run back to me again

13   your substantive argument because it wasn't in the email

14   regarding why these numbers are not relevant.

15          **MS. GOETZ-ANDERSON:**  Okay.  Our position is that the

16   only issue that financial -- the company's financial condition

17   is even potentially relevant to is punitive damages which

18   relates to Cardinal's net worth.  So we don't believe that all

19   of the financial information that they're seeking, for

20   instance, statements of cash flow are relevant to that issue.

21          **THE COURT:**  Is that -- is there case law to support

22   that, that the net worth is the only thing?

23          **MS. GOETZ-ANDERSON:**  I don't have it.  I think -- but

24   that's my understanding, yes.

25          **THE COURT:**  I'm inclined to allow for a more robust

67

1  disclosure but I don't -- I think you can -- showing actually

2  how much you guys have, assets, cash, et cetera versus a net

3  worth be a -- can be an accounting figure arrived at with

4  accounting rules rather than just pure numbers.

5          **MS. NARDECCHIA:**  Your Honor, if I may jump in.  I'm

6  sorry.

7          **THE COURT:**  sure.

8          **MS. NARDECCHIA:**  I've handled this issue often and

9  case law is replete with examples of Courts compelling

10 production of profit and loss statements, cash flow, accounts

11 receivable and balance sheets.  And we have a myriad of case

12 law on this and orders we have received from Magistrate judges.

13         **THE COURT:**  Okay.

14         **MS. NARDECCHIA:**  So we can provide that today if

15 necessary but we feel very strongly that we would succeed on

16 this issue as a matter of law.

17         **THE COURT:**  Why don't you provide -- has that been

18 provided to Ms. Goetz-Anderson?

19         **MS. RINGER:**  It should have -- it was provided in

20 meet-and-confer letters, case law was --

21         **THE COURT:**  It was?

22         **MS. RINGER:**  -- perhaps not, you know, every single

23 cite we have but, yes, we did provide supporting case law in

24 our meet-and-confer communications.

25         **THE COURT:**  Okay.  Well, Ms. Goetz-Anderson, your

68

1   choice -- or do you want to have further briefing on this or do

2   you want to take one opportunity to meet with Plaintiff's

3   counsel and then get back to me by the end of the week about

4   what you're going to be able to produce?

5           **MS. GOETZ-ANDERSON:**  We prefer to do the latter, your

6   Honor, where we can confer with our client to kind of figure

7   out what documents, as you say, they have that would show how

8   much money they have.

9           **THE COURT:**  Okay.  Is that agreeable from Plaintiffs?

10          **MS. RINGER:**  Yes, your Honor, thank you.

11          **THE COURT:**  Okay.  And then -- let's see here.  So

12  the parties will provide a statement -- the parties will let us

13  know by email whether they've resolved Number 8 by close of

14  business on Friday.

15          **MS. RINGER:**  Okay, thank you.

16          **THE COURT:**  Okay.  Number 9, EEOC's contracting

17  staffing agreements between Cardinal Health and staffing

18  agencies.  Again, this is at a -- they are at an impasse post-

19  LOD discovery.  So it seems to be -- is this a post-2018 issue

20  or something beyond that?

21          **MS. RINGER:**  It's -- I think, your Honor, that we --

22  the parties have somewhat resolved this ourselves as of a few

23  days ago.

24          **THE COURT:**  Okay.

25          **MS. RINGER:**  And so we don't have to dive into this

1    one.

2              **THE COURT:**  Very good.

3              Ms. Goetz-Anderson, is that your understanding?

4              **MS. GOETZ-ANDERSON:**  Yes.

5              **THE COURT:**  Very good.  Okay.  So let's get to Number

6    10.

7              **MS. RINGER:**  Your -- Number 10 concerns, as you know,

8    Cardinal Health's affirmative defenses.  We haven't received

9    any documents from Cardinal Health regarding what it's using to

10   support its affirmative defenses and they didn't provide any as

11   part of this initial disclosure.  This is just, you know, a

12   reminder to produce -- to supplement the production as they

13   identify documents they intend to or may need to rely upon for

14   their affirmative defenses.

15             **THE COURT:**  Got it.

16             Ms. Nardecchia, can you hear us?

17             **MS. NARDECCHIA:**  Yes, your Honor.

18             **THE COURT:**  Okay.  You're just frozen on my screen.

19   So I was just double-checking to make sure you're still there.

20             Okay.  Well, Ms. Ringer, isn't this sort of like I

21   get you want information but if they don't want to provide you

22   documents that support their affirmative defense, they can't

23   put on documents to support their affirmative defense?

24             **MS. RINGER:**  I agree with your statement.  So, yes,

25   I --

70

 1          **THE COURT:**  Okay.  Well --

 2          **MS. RINGER:**  -- I agree.

 3          **THE COURT:**  -- they know their outstanding

 4  obligations and if that's how they -- that may be their call.

 5          **MS. GOETZ-ANDERSON:**  And, your Honor, just for our

 6  position, we believe that we have produced documents that --

 7  you know, the policies and procedures and investigation

 8  documents that do support our affirmative defense but we do

 9  agree that to the extent that there are any other documents

10  that we believe support our affirmative defenses, then we'll

11  certainly produce them.

12          **THE COURT:**  Got it.  And is this part of the first

13  set of RFPs that went out, Ms. Ringer?

14          **MS. RINGER:**  Yes, it is.

15          **THE COURT:**  Okay.  So they'll get -- you'll get the

16  substantial compliance statement with respect to this as well.

17          **MS. RINGER:**  Exactly.  Thank you.

18          **THE COURT:**  All right.  Category 11.

19          **MS. RINGER:**  Category 11, it concerns our

20  interrogatory.  It's where we ask Cardinal Health to identify

21  all persons who complained about race harassment or graffiti.

22  They -- Cardinal Health's response -- it's our understanding

23  from the documents they did not respond completely and they did

24  not respond with respect to anything that's post the letter of

25  determination in 2018.  So we, you know, believe that they need

1    to respond and clarify that they have identified everybody who

2    complained to Cardinal Health about race harassment.

3           And that -- you know, to the extent they're going to

4    refer us to documents that they affirm that those documents

5    contain all -- the identity of all persons who have complained

6    about harassment and that that information is readily

7    ascertainable through the documents they're referring us to.

8           **THE COURT:**  Well, this is, again, compliance with

9    rules.  If it's interrogatories, they can do that by replying

10   -- by pointing to documents and they have to do it with

11   specificity and particularity such that the interrogatory can

12   be -- the response to it can be easily under -- well, not

13   easily but ascertained.

14          Ms. Ringer, is this interrogatory seeking information

15   company-wide or at their facility out in Ontario?

16          **MS. RINGER:**  It should be Ontario.  Yes -- I'm not --

17   I don't recollect if, like the scope the original request

18   itself but I'm certain that we represented to Cardinal Health

19   we were only seeking complaints from this specific facility.

20          **THE COURT:**  Okay.  I see here that Cardinal is

21   indicating that they're going to amend it -- their production.

22          Has it already done so, Ms. Goetz-Anderson?

23          **MS. GOETZ-ANDERSON:**  Your Honor, we did provide a

24   substantive response to this and then in our meet-and-confer

25   discussions, we did offer to amend it to refer to investigation

72

1    files which include any complaints.  Our understanding is that

2    the EEOC was not agreeable that that would be a response.  So,

3    I mean, we will definitely, like I said, amend that.

4              THE COURT:  So -- well, when you said, like you just

5    refer -- Cardinal just referred to the investigative files?

6              MS. GOETZ-ANDERSON:  No.  We did provide a

7    substantive response and then in the course of our meet-and-

8    confer discussions, we offered to amend it under Rule 33(d) to

9    refer to the complaints made in those investigation files that

10   we produced because the burden to review those documents to

11   locate names would be the same on the EEOC as it would be on

12   Cardinal.  But our understanding is that that was not an

13   acceptable solution for the EEOC.

14             THE COURT:  Well, did you identify the page where the

15   name is?

16             MS. GOETZ-ANDERSON:  Oh, we did not -- we have not

17   amended ours.  We've offered to and the EEOC said that would

18   not be a satisfactory response.  So we've not amended our

19   responses to include that.

20             THE COURT:  In your substantive response, did you

21   include all the names that were in those files?

22             MS. GOETZ-ANDERSON:  We did not.

23             THE COURT:  So how is that a complete response?

24             MS. GOETZ-ANDERSON:  We objected on several grounds,

25   your Honor.  One of them is the temporal scope issue but also

1    there were some, I think, vagueness in their objection -- I'm

2    sorry -- in their (indiscernible), some terms that we felt like

3    were vague and some information that we thought was not

4    appropriate for the response.  For example, they asked for

5    social security numbers and dates of birth, ethnicity, national

6    origin for everyone who responded which we didn't think was

7    appropriate.  We also objected that the phrase "race treatment"

8    was vague, you know, and to the extent that their complaint

9    alleges only racial harassment or discrimination against black

10   workers, that their request here is much more broad than that.

11             **THE COURT:**  Understand?

12             **MS. RINGER:**  Pardon me, your Honor.  The -- it's my

13   understanding during meet-and-confers, we narrowed our request

14   to harassment, race-based treatment and graffiti that was

15   offensive toward black workers and that we also narrowed the

16   timeframe from our original request and clarified we didn't

17   need social security numbers and perhaps a few other things

18   that aren't particularly important to this request.

19             Cardinal Health's response to our interrogatory was

20   to identify our charging parties who filed EEOC charges against

21   Cardinal Health and then one other individual who reported

22   race-related graffiti.  It didn't identify individuals who were

23   in their Human Resources investigations and who complained

24   about race-based harassment prior to June 2018.

25             But we -- with respect to the -- Cardinal Health's

74

1    position that they would like to amend and refer us to the

2    documents, I think today we're fine with them amending and

3    referring us to the documents to the extent we can -- that they

4    point us to the documents that identify these complainants but

5    they need to clarify in that response that that is a complete

6    -- or not clarify but we just need to know that that is a

7    complete list of everybody who complained about race-based

8    harassment during the timeframe in which they're agreeing to

9    produce this information.

10           By referring us to the documents, it's not -- they're

11   not confirming that there are no other people who have

12   complained and they have documents elsewhere.

13           THE COURT:  Well, aren't they doing that by saying,

14   here's who we know?  Isn't the flip of that that we don't know

15   of anybody else?

16           MS. RINGER:  I think, your Honor, we would just -- we

17   would like them to amend their responses and we will accept a

18   response that is amended and that points us to specific

19   documents.  We just simply -- you know, we've been waiting for

20   an amended response for quite some time and are just asking

21   for --

22           THE COURT:  Understood.

23           MS. RINGER:  -- it to be provided.

24           THE COURT:  What -- when -- Ms. Goetz-Anderson, when

25   do you think you can get that amended response by?

75

1          **MS. GOETZ-ANDERSON:**  We had agreed to do the amended

2     RFP responses by October 20th and we could amend this response

3     by that date as well, your Honor.  But just to clarify, in our

4     -- I'm looking at the correspondence between Ms. Ringer and me

5     following up from our meet-and-confer where they specifically

6     said that they did not agree to what she's now agreeing to and

7     that they did not agree to --

8          **THE COURT:**  Well, Ms. Goetz-Anderson, let's not look

9     -- let's -- we have a resolution.  It sounds like they're

10    agreeing to it.

11         **MS. GOETZ-ANDERSON:**  Uh-huh.

12         **THE COURT:**  Let's move on then.  Okay.  So let's go

13    to Number 12.

14         **MS. RINGER:**  Number 12, we -- is Interrogatory Number

15    7 where we seek to know all of the identities of the persons

16    who were responding to complaints of discrimination or

17    harassment between 2016 -- April 2016 and the present.

18    Cardinal Health did not provide a complete response.  They -- I

19    think they agreed to in their response itself that they would

20    produce a list of individuals who were responsible but in

21    subsequent meet-and-confers on this subject, a Cardinal Health

22    representative would refer us to the documents.

23         This is an instance where the documents do not tell

24    us who is responsible for investigating complaints of

25    discrimination and when were they in that role, where did they

76

1   work, who was --- what was their job title.  We've got -- it's

2   -- their Human Resources investigation files identify at least

3   a dozen people but not in the sense that it says their name and

4   their dates of employment and their responsibility and their

5   role.  They're just kind of simply embedded within email

6   communications and notes and that doesn't answer the

7   interrogatories.

8           So we're asking for a complete -- a response to the

9   interrogatory that actually provides us the information we need

10  to know to be able to identify these important witnesses.

11          **THE COURT:**  Ms. Goetz-Anderson.

12          **MS. GOETZ-ANDERSON:**  Your Honor, we did provide a

13  substantive response to this but we did not, you know,

14  specifically call out this person responded to this complaint.

15  And, again, we did offer to amend our response to refer the

16  EEOC under Rule 33(d) to the investigation files which I don't

17  think that we're on the same page as that would not provide

18  them with the information that they're seeking.

19          I mean, Ms. Ringer is right that there are names in

20  there but it's -- I think it's fairly easy to tell who's, you

21  know, responding to the complaint and I think this isn't fair.

22          **THE COURT:**  Well, I mean, this to me, at least the

23  synopsis of it, is basically they want to know who handled the

24  investigations and the complaints.  I don't know if it's

25  limited to company-wide or what it's limited to.

77

1          Ms. Ringer, can you give me some insight into that?

2          **MS. RINGER:**  The Ontario facility --

3          **THE COURT:**  Okay.  So who --

4          **MS. RINGER:**  -- complaints arising out of this

5   facility.

6          **THE COURT:**  -- so who handled the response -- reports

7   of complaints for discrimination or harassments at the Ontario

8   facility?  That's a pretty narrow interrogatory and it allows

9   to -- for them to identify the necessary folks who are related

10  to this.  So an objection in this regard is going to be a tough

11  one for me to go with, Ms. Goetz-Anderson.  So what would you

12  propose?

13         **MS. GOETZ-ANDERSON:**  Your Honor, we can amend our

14  response and provide names in addition to references to the

15  investigation files.

16         **THE COURT:**  Okay.  And then by referencing to the

17  investigation files, can you identify who the investigator is?

18         **MS. GOETZ-ANDERSON:**  I believe you can but to the

19  extent that you can't, we can provide those names.

20         **THE COURT:**  Okay.  Can we do that by 10/20 as well?

21         **MS. GOETZ-ANDERSON:**  Yes.

22         **THE COURT:**  Very good.  All right.  So --

23         **MS. RINGER:**  Your Honor, if I may.

24         **THE COURT:**  Yes.

25         **MS. RINGER:**  The -- it's not readily ascertainable --

1          **THE COURT:**  Well, Ms. Ringer --

2          **MS. RINGER:**  -- from these records.

3          **THE COURT:**  -- Ms. Ringer --

4          **MS. RINGER:**  Yes.

5          **THE COURT:**  -- Ms. Ringer, she says she's going to do

6    it.

7          **MS. RINGER:**  Uh-huh.  Thank you.

8          **THE COURT:**  I get that you say it's difficult --

9          **MS. RINGER:**  Okay but I --

10         **THE COURT:**  -- but they're going to -- and that's the

11   question I asked her.  It's like, can you readily identify

12   them?  She said, to the extent they can, they will provide the

13   name.

14         **MS. RINGER:**  Thank you.  Will they also provide job

15   titles and dates of employment, the request you talked about --

16         **THE COURT:**  Is that asked in the interrogatory?

17         **MS. RINGER:**  Yes.

18         **THE COURT:**  Okay.  That's a fair request.

19         **MS. GOETZ-ANDERSON:**  Yes.  And, your Honor, we can

20   provide those.  This -- in any event, that's going to be

21   provided on the employee list that we've already agreed to

22   provide, I think, largely.  But the request -- the

23   interrogatory includes -- well, let me back up.  Is the EEOC

24   just requesting their names and job titles?  Because there is

25   significant other information in this interrogatory about each

1   person that they're requesting.

2             THE COURT:  Okay.  Ms. Ringer?

3             MS. RINGER:  The -- our request, you know, asked for

4   various identifying information.  I think the other topic that

5   would be very helpful would to -- for them to identify what

6   department these individuals were working in, the different

7   areas.

8             THE COURT:  Well, what was asked in the

9   interrogatory?  What was asked in the interrogatory?

10            MS. GOETZ-ANDERSON:  Your Honor, I have it in --

11            MS. RINGER:  We asked for that information.  We asked

12   for that information.

13            MS. GOETZ-ANDERSON:  It's -- they asked for full

14   name, social security number, date of birth, race, ethnicity,

15   national origin, last known residential, business and

16   electronic addresses, telephone number, present job title or

17   last job title if not presently employed and name of agency or

18   entity that employs him or her and his or her job title.

19            THE COURT:  Okay.  The purpose, would it be fair to

20   say, Ms. Ringer, is to be able to contact these folks as

21   potential witnesses?

22            MS. RINGER:  The -- I think the purpose is to be able

23   to contextualize who was actually responsible for these Human

24   Resources complaints that we have, like, investigatory records

25   for so we could determine whether or not we need to take their

80

1  deposition and to the extent it's appropriate and they're a

2  prior employee, it could possibly be reach out to them as a

3  potential witness.

4          **THE COURT:**  Ms. Ringer --

5          **MS. RINGER:**  The main reason is --

6          **THE COURT:**  -- I asked, is it basically to reach --

7  be able to reach out to these folks as potential witnesses?

8          **MS. RINGER:**  No, your Honor.

9          **THE COURT:**  Okay.  I mean, that's how I see the

10  purpose of it, is basically you want to know what their title

11  was, you want to know what they -- that they were doing this

12  and then you want to be able to contact or reach out to them if

13  they're potential witnesses, right?

14          **MS. RINGER:**  We want to be able to know whose

15  deposition to take and I should -- let me correct myself.  So,

16  yes, is they're potential -- they're potential witnesses.

17  We're looking to identify them.  To the extent we need to

18  communicate with them, we need to know who they are and to the

19  extent we need to take their deposition, we need to know,

20  again, who they are and what their job title was and where they

21  worked.

22          **THE COURT:**  Okay.  It sounds like, Ms. Goetz-

23  Anderson, you'll be able to provide the names of the folks and

24  the contact information to the extent -- their names, their

25  titles and the contact information to be available -- since

81

 1  they're -- to the extent they're available?

 2          **MS. GOETZ-ANDERSON:**  Yes, your Honor.  Do you want us

 3  to provide contact information for current employees or just

 4  former employees?

 5          **THE COURT:**  If you -- I don't know if Cardinal is

 6  taking the position that if they need to speak with current

 7  employees, they need to go through you or not.  I just don't

 8  know.

 9          **MS. GOETZ-ANDERSON:**  We have taken that position.

10          **THE COURT:**  Okay.  Then in those people's -- in those

11  folks' regards, I think you can provide them the information of

12  how they can contact them through you.

13          **MS. GOETZ-ANDERSON:**  Okay.

14          **THE COURT:**  Is that fair, Ms. Ringer?

15          **MS. RINGER:**  Yes, your Honor.

16          **THE COURT:**  Okay.  So the folks who have left, you'll

17  get their names and titles and the most recent contact

18  information Cardinal has and the folks who are still there,

19  you'll have their names, titles and you'll be able to reach out

20  to them to -- through counsel.

21          **MS. GOETZ-ANDERSON:**  Yes, okay.

22          **MS. RINGER:**  Perfect.  Thank you.

23          **THE COURT:**  Okay.  Now, there are these two new added

24  ones.  But before I get into that, Ms. Goetz-Anderson, did you

25  have a chance to look at these two newly added areas?

82

1        **MS. GOETZ-ANDERSON:**  Briefly, yes, your Honor.

2        **THE COURT:**  Okay.  This deals with preservation.  At

3  least 13 is preservation of information.

4        So, Ms. Ringer, what are you seeking in this regard?

5        **MS. RINGER:**  We are seeking to obtain more

6  information about their -- what information has been preserved

7  or not and -- I'm sorry.  Give me one moment.  We -- so we

8  basically just need to understand to what extent have they

9  preserved all potential responsive documents or not.  We have

10  asked to take a 30(b)(6) deposition on the subject of the

11  litigation hold which they objected to and we have asked

12  counsel to disclose its litigation-hold letters, to whom they

13  were addressed and on what dates.

14        **THE COURT:**  Well, Ms. --

15        **MS. RINGER:**  They have not agreed to provide that.

16        **THE COURT:**  -- Ms. Ringer, were these requests made

17  in RFPs, interrogatories or are they in depo notices?

18        **MS. RINGER:**  The 30(b)(6) notice we served, I want to

19  say, two months ago includes the topic of litigation hold as

20  well as their information systems.

21        **THE COURT:**  Okay.  Well --

22        **MS. RINGER:**  Outside of that, this comes from --

23        **THE COURT:**  Well, let me -- let's -- let me stick on

24  the --

25        **MS. RINGER:**  Go ahead.

83

1          THE COURT:  -- let me stick on the 30(b)(6) issue.

2          MS. RINGER:  Okay.

3          THE COURT:  So you sent out a notice of deposition

4    for -- where one of the topics was what steps they took to

5    preserve documents related to this litigation?

6          MS. RINGER:  Yes.

7          THE COURT:  Okay.

8          MS. RINGER:  So Number 40 of the 30(b)(6) notice is

9    the litigation hold and 41 through --

10         THE COURT:  Got it.  Understood.  So --

11         MS. RINGER:  I'm sorry.

12         THE COURT:  -- and so in that regard, has the

13   30(b)(6) deposition occurred?

14         MS. RINGER:  No, your Honor.

15         THE COURT:  Okay.  And I haven't seen a protective

16   order cross my desk from Cardinal.

17         MS. GOETZ-ANDERSON:  Your Honor, we have not filed a

18   protective order.  You're correct.  Can I respond to that on

19   the 30(b)(6) piece?

20         THE COURT:  Sure.

21         MS. GOETZ-ANDERSON:  The EEOC served a 30(b)(6)

22   notice with 45 separate designations.  We responded with

23   objections to many of those designations and we have been

24   meeting and conferring with the EEOC.  I think that we've

25   worked out most, if not all, of our issues with respect to

84

1    those depositions.  So the deposition just hasn't been

2    scheduled yet.

3         Specifically, one of the designations was they asked

4    for a witness regarding Cardinal Health policies, practices and

5    procedures regarding document storage, retention, destruction,

6    preservation and collection of documents relating to the

7    Ontario facility during the relevant time period.  We did not

8    object to that designation.

9         We did object to the designation that asked about the

10   litigation hold.  You know, it's not that we won't provide any

11   information regarding our document preservation information but

12   the litigation-hold notices themselves are normally considered

13   an attorney-client privilege document would be our objection to

14   that.  So we have agreed to make a 30(b)(6) witness available

15   with respect to document storage, retention, destruction,

16   preservation, et cetera.

17        **THE COURT:**  Okay.  And within that subcategory --

18   within that category, I would assume you could ask if a case is

19   pending or if a case is noticed, what steps do you take?

20        **MS. GOETZ-ANDERSON:**  Agreed.

21        **THE COURT:**  All right.  And then if it turns out that

22   we don't take any steps, okay, that's a problem but that's a

23   problem that they're going to have to live with down the road

24   for spoliation of documents that may result in other remedy.

25        Ms. Ringer, thoughts?

85

1          **MS. RINGER:**  You know, we're -- your Honor, we're

2    yelling about something that was -- it kind of came out

3    unexpectedly through our deposition testimony where we learned

4    that Cardinal Health still has an auto-deletion of -- well, we

5    learned during the depositions of an auto-deletion of emails

6    policy at this Ontario facility and then counsel disclosed to

7    us that that is still in existence.  We also learned through

8    deposition testimony that managers had cell phones that they

9    were given stipends for.

10          **THE COURT:**  I got --

11          **MS. RINGER:**  They didn't provide that information.

12          **THE COURT:**  Ms. Ringer, I got all that.

13          **MS. RINGER:**  Yes, okay.

14          **THE COURT:**  I'm just wondering.  Now, the 30(b)(6)

15    notice that's gone out, they're going to be able -- they're

16    going to have to answer to what steps they've taken, if any, to

17    preserving documents.  They just don't want to turn over the

18    particular litigation-hold document but you can ask in a

19    30(b)(6) deposition of what steps are taken, what steps were

20    taken here and there may be some attorney-client -- the fact

21    that a litigation-hold letter goes out in and of itself does

22    not appear to me to be attorney-client privilege or attorney

23    work product.  It may be.  I'm not -- I haven't researched that

24    issue extensively.

25          But -- and I see that -- in the notes to me that you

86

1   found out that certain texts and emails have been destroyed.

2   What would you have me do?

3          **MS. RINGER:**  I think we're asking for discovery about

4   this specific instance as opposed to the policies and

5   procedures that Ms. Goetz-Anderson references, the request

6   where we ask about their policies and procedures regarding

7   document retention and preservation.  And to be -- we would

8   like information that's also specific to this instance and --

9          **THE COURT:**  Well, let me -- okay.  So let's talk

10  about the managers who texts were deleted.  If you ask them,

11  were you ever told by anybody to withhold them, they told you

12  no, right?

13         **MS. RINGER:**  Correct.

14         **THE COURT:**  Okay.  And I'm just curious.  Like, if

15  you could write up an order, what would the order say?

16         **MS. RINGER:**  We would like a deposition date for a

17  30(b)(6) on this subject as soon as possible.  That's what we

18  would --

19         **THE COURT:**  You have a 30(b)(6) notice topic on this

20  issue.

21         **MS. RINGER:**  We would like Cardinal Health to give us

22  dates for this 30(b)(6) to occur.

23         **THE COURT:**  Pardon me?

24         **MS. RINGER:**  We would like Cardinal Health to provide

25  dates that we can have this deposition on these subjects as

87

1  soon as possible so we can --

2          **THE COURT:**  Okay.  That --

3          **MS. RINGER:**  -- evaluate the level of prejudice we've

4  experienced.

5          **THE COURT:**  That's a different thing that what you

6  put in the email to me.  So have the parties been negotiating a

7  30(b)(6) date?

8          **MS. RINGER:**  We talked about the 30(b)(6) as a whole

9  and then separately but during the same kind of conversation,

10 we asked a lot of questions of Cardinal Health about their

11 preservation efforts and so we haven't come together and then

12 talked again about how we can fix this problem.  This was just

13 a few days ago.  We -- I mean, I think we just need -- we need

14 more information about what are their information systems and

15 what did they -- what steps did they take to preserve evidence.

16 And there are, I think, a variety of remedies --

17         **THE COURT:**  Okay.  Okay.  You've got --

18         **MS. RINGER:**  -- that will work for that 30(b)(6) --

19         **THE COURT:**  -- this request out there.  You guys need

20 to figure out a date and if it's 40 subtopics, I'm guessing

21 there's probably going to be more than one 30(b)(6) witness

22 who's going to speak to maybe several subcategories.  May not

23 be, I don't know but 40 categories is going to be a lot for one

24 person to have corporate knowledge of, is my assumption but I

25 may be wrong.

1          So you have those dates and they're on notice now

2   that, you know, documents have been destroyed and the remedy

3   you can seek is down the road.

4          **MS. RINGER:**  If your Honor will -- and prefers that

5   we should take the route of 30(b)(6), that is acceptable to us.

6          **THE COURT:**  Well, I don't know what you want.

7          **MS. RINGER:**  They -- Cardinal has objected based on

8   our request for a litigation hold 30(b)(6) witness.

9          **THE COURT:**  Well, they've --

10         **MS. RINGER:**  So I --

11         **THE COURT:**  -- they've rejected -- no, no.  No,

12   that's not.  They have objected to providing particular

13   information about the litigation hold here.

14         Is that fair to say, Ms. Goetz-Anderson?

15         **MS. GOETZ-ANDERSON:**  Yes.  And we will -- I think in

16   the context of a broader discussion about document

17   preservation, it's not that we are unwilling to provide any

18   information about the litigation-hold notice that we have

19   issued in this case but we do take the position that the hold

20   notice itself is privilege or work product.  But we are

21   willing, like I said, to make a witness available to discuss

22   these topics.

23         Just for the record -- I know this isn't quite an

24   issue here, your Honor, but we do not agree with the EEOC's

25   assertion that relevant documents have been deleted or were not

89

1    properly preserved.

2             **THE COURT:**  Understood, understood.

3             **MS. NARDECCHIA:**  Your Honor, may I just jump in for a

4    second?  I think in a 30 --

5             **THE COURT:**  Who is this?  I'm sorry.

6             **MS. NARDECCHIA:**  I'm sorry.

7             **THE COURT:**  Ms. Nardecchia?

8             **MS. NARDECCHIA:**  This is -- yes.  Can you hear me?  I

9    know I'm --

10            **THE COURT:**  Okay.  Yeah, the screen is frozen but go

11   ahead.

12            **MS. NARDECCHIA:**  I think, your Honor, we were very

13   concerned that there is still an auto-deletion of emails

14   occurring and that it sounds like no efforts were made to -- or

15   at least very unreasonable efforts were made to preservation.

16   So we see this as a very urgent issue and I think some guidance

17   from your Honor may be helpful to explain the obligation to

18   preserve and to look for -- yes, I -- and I think your Honor

19   was getting to a point that would help us which you were

20   addressing a different request but you said that Defendants

21   need to identify limitations and searchability, what they can

22   and cannot search.

23            And I think that is their obligation under the

24   advisory committee notes that it's incumbent upon a party to

25   say their limitations and what -- or to identify the areas that

90

1    they are -- that have potentially responsive information and

2    that they're not searching or cannot search.

3            We need to know those answers immediately, your

4    Honor, because the prejudice to our case is that we learn about

5    things in a deposition that either are destroyed, like a

6    graffiti email that they should have produced and they still

7    are not giving it.  So we don't know if they're gone forever or

8    if we -- they exist and we haven't been given them.

9            **THE COURT:**  So, Ms. Nardecchia, I can't see you

10   because my screen is frozen.  But what would you want the order

11   to say with respect to -- and I want to focus on this

12   particular issue which is the destruction issue that the EEOC

13   is claiming.  What would the order say?

14           **MS. NARDECCHIA:**  I think it would help in addition to

15   a 30(b)(6) or even as an alternative to have an initial meeting

16   with Defendant's ESI person who could speak intelligently to

17   this issue and someone from our side who first -- maybe even

18   this week talk about what are all the areas that we could have

19   potentially relevant information and -- yeah, I'm sorry, your

20   Honor.  I just -- I think --

21           **THE COURT:**  I don't understand your request though.

22   I mean --

23           **MS. NARDECCHIA:**  No --

24           **THE COURT:**  -- how is it related to -- you basically

25   want to tell them, you know, from a destruction of documents

91

1   standpoint, the case law and the rules are out there.  Follow

2   the -- you just want me to tell them to follow the rules?

3          **MS. NARDECCHIA:**  I think, honestly, that would help,

4   your Honor, because to have -- there's case law that says, if

5   you have a -- if you fail to suspend automatic destruction,

6   particularly at this point in litigation, that's sanctionable

7   and we're concerned that they don't see any issue with that,

8   your Honor.

9          **THE COURT:**  Well, let me stop you there.  You guys

10  want to move for sanctions, move for sanctions.  You guys want

11  trial relief based upon the destruction of documents, you can

12  do that before Judge Marshall.  If you -- those are all

13  available for you and -- I mean, okay, I'll put on the record.

14  Everybody, please follow these several discovery rules.

15          Anything else -- I mean, I get what you're saying,

16  Ms. Nardecchia, and it's very frustrating from the sense of if

17  you see documents being destroyed on the other side that may be

18  helping your case and, you know, the fact that it's on the

19  record and Ms. Goetz-Anderson has disputed that but you brought

20  it to the Court's attention.  You brought it in a hearing and

21  if they continue to do that, even though I've said, look,

22  everybody's got to follow the Rules of Civil Discovery

23  including preservation as appropriate.

24          There's not much else I can do at this point, is

25  there?

92

1          **MS. NARDECCHIA:**  I mean, your Honor, there are cases

2     ordering this kind of telephonic conference among counsel that

3     I just described or a declaration from counsel.  But, you know,

4     we -- we're fine if your Honor prefers us to take a 30(b)(6) --

5          **THE COURT:**  A telephonic conference of what?

6          **MS. NARDECCHIA:**  Well, there are cases where judges

7     have ordered that both sides meet to talk about all the

8     different systems where ESI could be found and collected and

9     this is not a 30(b)(6).  This is more of an informal thing, an

10    initial round.  That way we don't have to eat up a lot of time

11    on 30(b)(6) when we could do this informally before that.  And

12    I think that would help and, like, let's get the cards on the

13    table or what's out there, what is gone.  That helps us also

14    craft our argument for sanctions.

15         **THE COURT:**  Fair enough.

16         Ms. Goetz-Anderson, is there any objection to getting

17    on the phone with the necessary folks on your ESI side, counsel

18    and counsel from both sides to figure out, rather than sort of

19    two ships passing in the night as I probably ordered previously

20    by terms and custodians?  If you have a conference with the

21    necessary ESI folks and we kind of -- you guys hash through

22    this.  Any thoughts?

23         **MS. GOETZ-ANDERSON:**  I mean, your Honor, I -- my

24    position on that would be that I thought that's what we agreed

25    to do on a 30(b)(6).  I mean, they also asked for information

93

1    about our information systems which subject to some

2    limitations, we agreed to provide someone to testify about that

3    or video surveillance.  I mean, it goes on and on.  Like, we've

4    agreed to, you know, produce a 30(b)(6) witness on this but I

5    think -- I don't know how that's different and why they should

6    get to do that informally and then take a second bite of the

7    apple and do it in a 30(b)(6) context.  So I guess in our

8    opinion, it'd be -- could we do one or the other rather than

9    both?

10           **THE COURT:**  Well, I guess, Ms. Nardecchia, I'm at a

11   loss here in the sense of the procedures that we have in place

12   and my job is to minimize the expense.  I appreciate that as

13   well and take that seriously.  That's why we have this phone

14   mechanism versus -- I don't know if you've had to utilize our

15   Rule 37-1 procedure which is -- which can be very expensive and

16   time-consuming.

17           **MS. NARDECCHIA:**  Yes.

18           **THE COURT:**  So at the end of the day, if you guys can

19   agree on terms and can agree on custodians or you can't, you

20   come to me and it may cost Cardinal a whole heck of a lot of

21   money unless they decide to put their cards on the table, like,

22   here's why we can't do this.  But that's going to be totally up

23   to them.  If I -- let's say, if you say, you know, terms of

24   discrimination or training and -- or, you know, as it relates

25   to Ontario, you're getting those.  And if they say, oh, we've

94

1    got to look through all these people, it's like okay, well, you

2    should have told us sooner that you can't.

3            **MS. NARDECCHIA:**  Right.  Okay, yeah, your Honor, I

4    think that -- you know, I think your point is well taken and

5    I'm not trying to be inefficient here.  So I think if the email

6    by this Friday can include what your Honor discussed and then

7    -- you know, and we want to make clear it also includes cell

8    phones and hard drives, not only emails -- all ESI.  Then we

9    can confer and get to the bottom of that but have the 30(b)(6)

10   as soon as possible.

11           **THE COURT:**  That -- the 30(b)(6) is going to be up to

12   you folks of when you can -- if you can't get to -- if you

13   can't agree on a date, come back and we'll -- I'll set a date.

14           **MS. NARDECCHIA:**  Thank you, your Honor.  I think we

15   just had some confusion about what Defendants were objecting to

16   and what they weren't.

17           **THE COURT:**  Okay.  So I think that's been clarified.

18   Thank you for that, Ms. Goetz-Anderson.

19           So I think that takes care of both 13 and 14; is that

20   correct, Ms. Ringer?

21           **MS. RINGER:**  I think it does.

22           **THE COURT:**  Okay.  Well, very good.  So what I'll do

23   is I'll issue an order out with the scheduling and the things

24   that we discussed today and then we'll get moving on the other

25   prospects.  And then if there's any other issues, send us an

95

1    email.  We'll get on the phone quick.

2              **MS. RINGER:**  Thank you so much, your Honor.

3              **THE COURT:**  All right, thank you, everyone.  Thank

4    you for your time and stay safe.

5              **MS. GOETZ-ANDERSON:**  Thank you.  You too.

6              **MS. RINGER:**  Bye.

7              **THE COURT:**  Bye.

8         **(Proceeding ended)**

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATION


I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.




_____          October 16, 2020


                    TONI HUDSON, TRANSCRIBER